[L. A. Nos. 19280, 19296.   In Bank.   June 25, 1946.]

ROWENA SCHNEIDER BALDWIN, Plaintiff and Appellant, v. BALDWIN M. BALDWIN, Defendant and Appellant.

Jerry Giesler, Meyer M. Willner, Joseph Scott, A. H. Risse and J. Howard Ziemann for Plaintiff and Appellant.

Meserve, Mumper & Hughes, Roy L. Herndon, Frank P. Doherty and William R. Gallagher for Defendant and Appellant.

SCHAUER, J.—Plaintiff appeals from a judgment rendered against her in an action against defendant, Baldwin M. Baldwin, for divorce, support, a share of alleged community property, costs of suit, and attorneys' fees; and defendant appeals from an order made following the filing of plaintiff's notice of appeal and requiring defendant to pay

plaintiff's attorneys' fees and costs on appeal. We have concluded that both the judgment in the main action and the order appealed from must be affirmed.

## THE JUDGMENT IN THE MAIN ACTION.

At the trial of the divorce suit plaintiff conceded that the parties had no community property. The trial court found as a fact that since the intermarriage of the parties, which took place on October 21, 1937, "defendant has inflicted upon plaintiff extreme mental cruelty, causing her grievous mental suffering," but held that a decree of divorce in defendant's favor and against plaintiff, rendered by a Nevada court on December 16, 1939, is entitled to full faith and credit in this state and that "plaintiff is not entitled to any relief whatsoever herein." On this appeal plaintiff contests the validity of the Nevada divorce, asserting that California is not bound by the provisions of section 1 of article IV of the United States Constitution to give full faith and credit to the Nevada decree and that the evidence is insufficient to support the trial court's finding that the "residence and domicile acquired and maintained by . . . defendant . . . in the . . . State of Nevada, commencing on July 1, 1939, . . . was acquired in good faith and was at all times a bona fide residence and domicile; that . . . defendant continued to maintain his said [Nevada] residence and domicile . . . subsequent to said [Nevada] judgment and decree of divorce." Plaintiff further asserts that consequently the Nevada decree is not entitled to recognition in California. She also urges that the trial court erred in sustaining defendant's objection to an offer made by plaintiff to prove that defendant "was the wrongdoer and that his Nevada divorce decree was secured by untruthful testimony" in support of the ground (extreme cruelty) upon which such decree was secured.

It appears from the record that on October 21, 1937, plaintiff and defendant, who were then residents of California, intermarried, and on or about January 24, 1939, a final separation took place between them. Until on or about July 1, 1939, both parties continued to maintain residence in this state. No children were born as the issue of the marriage; plaintiff, however, has three minor children by former marriages. Following the separation of the parties and on approximately July 1, 1939, defendant left California and went to the county of Washoe in the State of Nevada, where, on October 13, 1939, he filed a complaint for divorce against plaintiff herein. On

October 27, 1939, plaintiff herein, Rowena Schneider Baldwin, filed, in Los Angeles County, in this state, this divorce suit against defendant, Baldwin M. Baldwin. On November 15, 1939, a copy of the summons and complaint in the Nevada suit was personally served on plaintiff herein in Los Angeles County, and on December 16, 1939, a judgment was rendered in the Nevada suit, by which it was decreed "that the bonds of matrimony . . . existing between the plaintiff and defendant be, and the same hereby are, forever dissolved." On March 29, 1943, defendant herein filed his answer to plaintiff's complaint (First Amended and Supplemental) in the California suit, setting up as a plea in bar the Nevada divorce decree. On August 3, 1944, judgment was entered sustaining such plea and decreeing that the parties have not been husband and wife since the Nevada decree was rendered on December 16, 1939; that, except as to the payment of certain attorneys' fees, plaintiff is entitled to no relief whatever against defendant; that she has no "right, title, claim or interest in and to any of the property" of defendant; that an order made in this action and dated January 5, 1940, "directing payment of support money and counsel fees, be and the same is hereby vacated"; and that defendant pay certain additional attorneys' fees to plaintiff's attorneys. Plaintiff's appeal is from all portions of the judgment except that awarding the attorneys' fees.

Concerning the bona fides of defendant's domicil in Nevada, the trial court in the instant case found that on July 1, 1939, defendant moved all of his personal effects to Washoe County in Nevada with the intention of making that county and state his permanent residence and domicil, and thereafter resided continuously in such county to the date of filing (on October 13, 1939) his complaint for divorce against plaintiff herein, and still resided there at the time this present action was tried (on July 10, 1944); that during the period between July 1, 1939, and October 13, 1939, defendant opened a bank account and rented a safe deposit box in Washoe County; that he has paid his personal property taxes to and registered to vote and has voted in such county, and is there registered under the Selective Service Act; that he has registered his automobile in the state of Nevada, filed income tax returns as a resident of that state, and actively participated in the civic and political affairs of Washoe County; that defendant's Nevada residence and domicil were acquired in good faith

and were at all times bona fide, and that at all times subsequent to moving to Nevada on July 1, 1939, defendant had intended Washoe County to be his permanent residence and domicil.

These findings—many of them of probative facts—are fully supported by the evidence. In furtherance of her attack upon the bona fides of defendant's Nevada residence, plaintiff selects and quotes certain testimony which she asserts establishes that such residence was a sham. She urges also that "a careful analysis of the evidence submitted on behalf of respondent [defendant] to support his contention that he had changed his domicile to Nevada shows little more than a carefully followed out artifice planned to give the appearance of a change of domicile." Without setting forth the evidence in detail, it is sufficient to observe that that relied upon by plaintiff, together with the inferences in her favor which might be drawn therefrom, does nothing more than create a conflict upon the mooted point. Under such circumstances the finding of the trial court must stand. (*De Young* v. *De Young* (1946), 27 Cal.2d 521, 525 [165 P.2d 457], and cases there cited.) Under any view, therefore, of the effect of the full faith and credit clause (U.S. Const., art. IV, § 1) the Nevada decree is valid as against this attack.

Plaintiff's next contention—that the trial court erred in refusing to permit her to introduce evidence to prove her claim that defendant was the "wrongdoer and that his Nevada divorce was secured by untruthful testimony" regarding acts of cruelty by plaintiff towards defendant—is answered by the decision in the first Williams case (*Williams* v. *State of North Carolina* (1942), 317 U.S. 287 [63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273]). In plaintiff's briefs she concedes that "The rule laid down by the Supreme Court of the United States outlined in the first Williams case may briefly be stated as holding that it is immaterial whether or not the spouse who secured the divorce in the foreign state was the wrongdoer." Nevertheless, she urges that under the decision of this court in *Delanoy* v. *Delanoy* (1932), 216 Cal. 27, 37 [13 P.2d 719], she should have been permitted to testify that she gave defendant "no ground for divorce, she treated him as a dutiful and loving wife." The applicable principles were, however, correctly stated by the learned trial judge, in rejecting plaintiff's offer of proof, as follows: "[T]hat would be her conclusion. Lots of wives think they are dutiful,

when others think they are not. I am satisfied under the state of the law it is not proper for this Court in this case to inquire into the merits of the grounds on which that decree was granted. This Court will hold that the court had jurisdiction to grant that divorce, right or wrong; if the court had jurisdiction, it had the right to grant the divorce, even if the testimony was not sufficient, or if his decision was contrary to the testimony, the court had power to do it. When the court gets jurisdiction, it has the right to exercise it rightly or wrongly, and that it has exercised it wrongly is very often manifested by the number of motions for a new trial and appeals taken from a judge's decision. Always one side thinks he exercises jurisdiction wrongly. The objection to the question is sustained. I am satisfied I am correct in standing on that proposition that the merits, or as this Court says the fact as to who was the offending spouse cannot be entered into on this trial for the purpose of affecting the validity of the Nevada decree." (See 27 C.J.S. § 336, p. 1303; 34 C.J. § 1634, p. 1153; 17 Am.Jur. § 744, p. 560; 31 Am.Jur. § 580, p. 179.)

Moreover, plaintiff's briefs reveal that her purpose in attempting the introduction of such testimony is not to attack the validity of the Nevada decree in Nevada, but to support her contention that she is the innocent spouse, that therefore the marital domicil remained with her in California, and consequently Nevada's courts were without jurisdiction to dissolve the marriage of the parties. As stated above, by the decision in the first Williams case, such a contention has been conclusively settled adversely to plaintiff. In that case the Supreme Court observed, at page 300 of 317 U. S. Reports (p. 214 of 63 S.Ct.), that "the question as to where the fault lies has no relevancy to the existence of state power. . . . The existence of the power of a state to alter the marital status of its domiciliaries, as distinguished from the wisdom of its exercise, is not dependent on the underlying causes of the domestic rift. As we have said, it is dependent on the relationship which domicil creates and the pervasive control which a state has over marriage and divorce within its own borders. . . . [p. 301] As stated above, we see no reason . . . for making the existence of state power depend on an inquiry as to where the fault in each domestic dispute lies. And it is difficult to prick out any such line of distinction in the generality of the words of the full faith and credit clause." The Nevada court must be held to have had jurisdiction to render the divorce decree to defendant herein.

■ With regard to plaintiff's claim for support, costs of suit, and attorneys' fees, plaintiff herself testified and the trial court found that ''plaintiff is now and has been, since prior to the commencement of this action, receiving an income of $300.00 per month; that in addition, for a period of years prior to and following the commencement of this action, plaintiff's mother gave to plaintiff the sum of $800.00 per month, which said sum was later reduced to $600.00 per month; that, in addition, plaintiff's said mother supplied her, during all of said period, with additional sums of money to meet plaintiff's needs; that defendant Baldwin M. Baldwin paid to plaintiff the sum of $300.00 per month from January, 1939, to September, 1939, inclusive. . . . That the respective fathers of . . . [the] three minor children of plaintiff are now and have been for some time past making payments to her for the support of said children pursuant to orders of the above-entitled Court; that said defendant Baldwin M. Baldwin never, at any time, agreed to take or took said children into his home and family and maintained and supported them as his own children.'' The court further specifically found the ultimate facts ''that plaintiff, prior to the commencement of the within action, had and now has a substantial income of her own in an amount sufficient to maintain and support plaintiff and provide plaintiff with all of the necessities of life, in the station of life in which plaintiff is and has been accustomed; . . . That it is not true . . . that plaintiff is or was without sufficient means with which to support herself and/or the minor children of plaintiff by two former marriages; . . . that it is further not true that the sum of $1,100.00 per month, or any other sum or amount whatsoever or at all, is a reasonable sum to be allowed plaintiff as and/or for permanent alimony, support and/or maintenance, or for maintenance pendente lite.'' The court also found, pursuant to evidence introduced, that defendant was possessed of separate property real estate of the value of approximately $15,000; that under the terms of a trust created by the will of his deceased mother he ''is to receive'' an income of $1,500 a month for a period of fifteen years from October 25, 1939; and that at the expiration of such fifteen-year period he will, provided he is then living, inherit an undivided one-half interest in the remaining corpus of the trust estate; that the value of such corpus, as of March 31, 1944, was $2,035,000. It appears that at the time of the trial herein defendant was also receiving a salary as a commissioned officer in the United States Army.

In view of the evidence and the findings as to the extent of plaintiff's income as compared to that of defendant, it is apparent that the trial court was justified in its determination that plaintiff possessed sufficient means with which to support herself and was not entitled to an allowance for either temporary or permanent support from the separate estate of defendant. It is provided by section 142 of the Civil Code that where, as here, "there are no children [of the marriage], and either party has a separate estate sufficient for his or her proper support, no allowance shall be made from the separate estate of the other party." ██ The rule has also been declared that "The granting and refusing of alimony in actions for divorce is a matter which lies largely in the discretion of the trial court. . . . Before the appellate courts will interfere, it must be made clearly and affirmatively to appear upon the face of the entire record in the case that this discretion has been abused." (1 Cal.Jur. 1012, § 64.) Upon the record now before us, no such abuse of discretion appears as to the order under discussion.

██ A further issue involves the validity of an order made and entered herein on January 5, 1940, directing the payment from the property of defendant of $850 alimony pendente lite to plaintiff, and of $15,000 attorneys' fees and $1,000 costs of suit to plaintiff's attorneys. The trial court found, and the evidence supports the findings, that such order was made without any notice whatsoever to defendant herein and "without the Court having any jurisdiction over the person or property of said defendant. . . . That the within action was commenced on the 27th day of October, 1939; that on the 15th day of December, 1939, the . . . amended and supplemental complaint was filed herein. . . . That an order for the service of summons by publication on the defendant . . . was signed and filed . . .; that said order . . . directed that service of the summons . . . be made . . . by publication thereof in The Los Angeles Daily Journal . . . [and] directed that a copy of the summons and complaint . . . be mailed to the defendant Baldwin M. Baldwin at his place of residence, to wit, El Reno Apartments, 1307 South Virginia Street, Reno, Nevada . . .; that said order did not direct that any copy of the first amended and supplemental complaint, which was then on file in said action, be served upon or mailed to said defendant Baldwin M. Baldwin.

"That on the 23rd day of February, 1940, an affidavit of

publication of summons on first amended and supplemental complaint was filed herein, reciting that the summons on first amended and supplemental complaint was published in the Independent Review, a newspaper of general circulation printed and published semi-weekly in the County of Los Angeles; that no other affidavit of publication of summons was ever made or filed in this action; that no summons in this action, either on the original complaint or on the first amended and supplemental complaint, was ever published in said The Los Angeles Daily Journal, as required by the said order for publication of summons; that on January 16, 1940, an affidavit of mailing of copy of summons and complaint and copy of affidavit and order for publication of summons was filed herein, reciting that . . . [one] Joseph Collins did, pursuant to an order of this Court for publication of summons, mail a copy of the summons and complaint in said action to the defendant Baldwin M. Baldwin at El Reno Apartments, 1307 South Virginia Street, Reno, Nevada; that no affidavit of mailing any copy of the first amended and supplemental complaint herein to the defendant Baldwin M. Baldwin has been filed in this action; that no copy of the first amended and supplemental complaint herein was, in fact, mailed to the defendant Baldwin M. Baldwin, nor was said defendant ever personally served with a copy of said first amended and supplemental complaint. That on the 15th day of December, 1939, an order to show cause in re attorneys' fees, Court costs, alimony pendente lite, restraining order and appointment of receiver was issued . . . requiring the defendant . . . to show cause, . . . on the 22nd day of December, 1939, why he should not be required to pay to the plaintiff reasonable sums for attorneys' fees, Court costs and for the support . . . of plaintiff during the pendency of this action. . . . That on the return day of said order to show cause, to wit, December 22, 1939, the hearing on said order to show cause with respect to attorneys' fees, Court costs and alimony pendente lite was continued on motion of the plaintiff to January 5, 1940, in Department 8 of the above-entitled Court, without any notice whatsoever to the said defendant Baldwin M. Baldwin; that on the date the hearing on said order to show cause was continued, to wit, December 22, 1939, and likewise on the date to which said hearing was continued, to wit, January 5, 1940, the said defendant Baldwin M. Baldwin had not appeared in the above-entitled action, nor had said order to show cause been served upon him, nor

had any process of any kind or character been served upon him; that said . . . Baldwin M. Baldwin had no notice of the hearing on said order to show cause to be had on December 22, 1939, and did not appear in Court on either said December 22, 1939, or the date to which said hearing was continued, to wit, January 5, 1940 and had no*t* notice of the continuance of said hearing from December 22, 1939, to January 5, 1940, or notice that said hearing was to be had on said January 5, 1940. . . . That on January 5, 1940, an order was made and entered . . . without any notice whatsoever to defendant . . . and without the Court having any jurisdiction over the person or property of said defendant . . . ordering and directing [the payment by a receiver theretofore appointed herein, and from property of defendant] . . . to plaintiff for alimony pendente lite the sum of $850.00 per month . . . commencing forthwith . . . [and] $15,000.00 attorneys' fees . . . [and] $1,000.00 costs . . .; that no copy of the summons and complaint, or first amended and supplemental complaint herein, was ever served upon said defendant and no property of said defendant was seized, or sequestered by said receiver as hereinbefore found prior to the making of said order on January 5, 1940, . . . and said defendant did not make any appearance in the action prior to the filing of his answer on March 29, 1943.''

It thus appears that on January 5, 1940 (when the disputed order was made), the defendant had not voluntarily appeared, had not been served with process either in this state or by publication (disregarding other infirmities the proceedings were incomplete as two months had not elapsed following the order for publication; see Code Civ. Proc., § 413), the receiver who had theretofore been appointed did not have in his possession or under his control property belonging to the defendant, and (impliedly) no property of the defendant had been attached. The rule in this jurisdiction is clearly to the effect that pendente lite allowances to a wife are ineffectual as personal judgments against the husband where he has neither voluntarily appeared nor been personally served with process in this state, and that in cases where personal jurisdiction over the husband is not obtained but a receiver is appointed to take charge of, or an attachment is levied on, the husband's property in this state the power of the court is limited to property within its control. (1 Cal.Jur. § 5, pp. 949-950, and cases there cited.) Inasmuch as service had not been had on defendant nor had the receiver taken into his possession or the court attached

property of the defendant at the time of the making of the order of January 5, 1940, such order was correctly held by the trial court to be void and of no effect. (*Cf. Nichols* v. *Superior Court* (1934), 1 Cal.2d 589 [36 P.2d 380].)

THE ORDER RE ATTORNEYS' FEES AND COSTS ON APPEAL.

On October 16, 1944, plaintiff caused to be issued an order directing defendant to show cause why he should not pay her costs and attorneys' fees on appeal, together with alimony pending appeal. Defendant again set up the Nevada divorce decree as a plea in bar, and also defended on the ground that plaintiff possessed sufficient funds to support herself and to meet such costs and fees. At the hearing, on November 20, 1944, plaintiff again testified that in addition to support money from her former husbands for her children, she received $300 a month from a trust fund together with such further sums (ranging from $600 to $800 and upwards monthly) from her mother as were necessary for the support of plaintiff and her children. She stated further that her living expenses totaled approximately $1,000 per month; and that on the date of the hearing she possessed in funds approximately $2,000, which was made up of current support money and of $1,450 paid to her by an insurance company following her loss of a ring, but that she had no other liquid assets. Evidence was also again introduced to the effect that defendant was receiving $1,500 a month from the trust established by the will of his mother, together with his salary as an army officer. The court refused defendant's request to make a finding in this proceeding concerning the validity and effect in California of the Nevada divorce decree, stated that plaintiff had sufficient funds to support herself and denied her request for alimony pending appeal, but ordered defendant to pay out of his separate estate plaintiff's costs on appeal together with $2,500 to her attorneys as their fees on appeal.

In attacking such order defendant urges, first, that following the Nevada divorce decree plaintiff was no longer his wife, and that only a wife or a husband can properly be awarded suit money; and, second, that plaintiff failed to show that an award from him was needed in order to enable her to properly prosecute her appeal.

In support of his first contention defendant relies upon statements contained in *Hite* v. *Hite* (1899), 124 Cal. 389 [67 P. 227, 71 Am.St.Rep. 82, 45 L.R.A. 793]; *Carbone* v. *Superior Court* (1941), 18 Cal.2d 768, 771 [117 P.2d 872, 136

A.L.R. 1260]; and *In re Cook* (1941), 42 Cal.App.2d 1, 3 [108 P.2d 46], to the effect that before alimony or suit money can be awarded, the person seeking it must prove ''existence of the marriage'' with the other party to the proceeding. In the Hite and the Cook cases, however, it was the fact or the validity of the original marriage which was in dispute, and in the Carbone case the holdings of the Hite and the Cook cases were discussed by the court in considering the application of an illegitimate child to enforce support pendente lite from her alleged father. In none of the three cases was an issue presented as to the validity of a divorce decree secured by one party following an admitted marriage to the other. Here the marriage relationship admittedly existed at the time of, and continued for several weeks following, the filing by plaintiff of her divorce complaint in this state, and the chief defense offered by defendant to plaintiff's requests for relief is that he thereafter secured in another state a decree of divorce from her. It is our view that under such circumstances, and upon a proper showing otherwise, plaintiff should not be denied the payment from defendant of funds to enable her to properly prosecute an appeal from the judgment determining the fact and effect of the Nevada decree. (*Cf. Fisher* v. *Superior Court* (1930), 110 Cal.App. 565, 567 [294 P. 445]; *Stewart* v. *Stewart* (1939), 32 Cal.App.2d 148, 150 [89 P.2d 404].) It is now the law of this state that it is only after such an appeal has been finally determined (or the judgment of a California trial court adjudicating such issue has become final) that the validity or lack thereof of the Nevada decree and its effect— and consequently the marital status and reciprocal obligations of the parties in this state—can be conclusively settled. (*Crouch* v. *Crouch* (1946), *ante,* p. 243 [169 P.2d 897].)

Concerning plaintiff's need for an award from defendant in order to enable her to pay the costs and attorneys' fees incident to her appeal, defendant asserts that the trial court abused its discretion (see 1 Cal.Jur. § 46, p. 992, and cases there cited) in making such an award to one who was in receipt of $900 to $1,000 monthly and who had in her possession at the time of the hearing the sum of approximately $2,000 in cash. Defendant does not, however, dispute the reasonableness of the sum ($2,500) awarded to plaintiff's attorneys.

We are of the view that under all of the circumstances presented, it cannot be said that as a matter of law plaintiff failed to establish her need for the award or that the trial

418

court was unwarranted in making it. The parties had no community property. Except for current support money (the greater part of which came to plaintiff from her mother), the only cash in plaintiff's possession was the $1,450 insurance proceeds received by her following loss of certain of her separate personal property. The court is under no duty to require her to first exhaust her own separate and meagre capital resources before it can order defendant to pay her costs and attorneys' fees on appeal (cf. Westphal v. Westphal (1932), 122 Cal.App. 379, 386 [10 P.2d 119]). Moreover, her liquid resources were, at the moment, not fully adequate to meet the $2,500 which the trial court determined was a reasonable sum to be paid to plaintiff's attorneys, and to pay the expenses of securing reporter's and clerk's transcripts and printing appeal briefs. While the circumstances would well have supported a contrary determination we are of the view that those same circumstances do not necessarily require the conclusion that the trial court abused its discretion in making the disputed award.

In case No. L. A. 19280 the judgment from which plaintiff appeals is affirmed, and in case No. L. A. 19296 the order from which defendant appeals is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.