[Civ. No. 18242.   First Dist., Div. One.   May 28, 1959.]

VERNON S. DALLMAN, Appellant, v. ETTA H. DALLMAN, Respondent.

[Civ. No. 18246.   First Dist., Div. One.   May 28, 1959.]

VERNON S. DALLMAN, Respondent, v. ETTA H. DALLMAN, Appellant.

J. W. Ehrlich, Edward F. Dullea and Duncan Davidson for Appellant in Civ. No. 18246 and Respondent in Civ. No. 18242.

David Livingston, Harold R. Farrow, James R. Mansfield and Robert R. Barton for Appellant in Civ. No. 18242 and Respondent in Civ. No. 18246.

HANSON, J. pro tem.*—This is a controversy over alimony allowed by the court in a divorce suit in which the husband was the plaintiff and the wife the cross-complainant. After 28 years of married life when the two children of the parties had attained their majority, the husband and father filed his action for divorce alleging as grounds desertion and extreme cruelty. The wife by her cross-complaint sought a divorce on the ground of extreme cruelty.

Approximately a year thereafter was spent by the parties, their counsel, and accountants in the examination of books and records and negotiations aimed at achieving a property settlement agreement. On June 27, 1957, such an agreement was signed by the parties, but the agreement reserved for the determination of the court what, if any, alimony should be awarded to the wife. The husband claimed no alimony was allowable while the wife claimed it was. By virtue of this property settlement agreement the wife became the vested owner of property which represented one-half of the value of the community property; that is, she became owner of property of the value of $455,965.28 after the payment of costs and counsel fees. Most of the property had been divided equally. However, the wife had refused to accept in kind one-half of the husband's interest of 34 per cent of the stock of a corporation owned by his family partnership and had required that her husband pay her the sum of $150,000 in lieu of such one-half

*Assigned by Chairman of Judicial Council.

interest. The corporation has, since the war, been losing money and beginning with the calendar year 1953 continued to lose the sum of approximately $156,000 annually.

In classifying this property, the agreement provided that the "wife shall receive as her share of the community property of the parties the following items, and the husband hereby relinquishes to the wife all right, title and interest therein, and *the same shall hereafter be her separate property.*" (Emphasis added.)

The parties then agreed that the wife would present her case for divorce on the cross-complaint and that the husband would not seek to evidence his alleged grounds for divorce as set forth in his complaint.

On September 6, 1957, the court ordered that a divorce be granted to the defendant and cross-complainant and further provided for alimony in the sum of $750 per month to be paid by the husband to the wife. The order allowing alimony was set aside on November 22, 1957. On the same day, Mr. Dallman made a formal motion to reopen the case. The motion was granted.

For the purpose of avoiding a protracted trial of the divorce issue as well as the determination of property rights, the parties entered into a stipulation which contained the following: "Nothing herein shall be deemed an admission by Dallman that Mrs. Dallman is entitled to a divorce or alimony and Dallman hereby objects to any adverse findings of fact or provisions in the interlocutory decree in that respect and if such objection shall be overruled by said court they shall be preserved and exception to said rulings, if any, shall be deemed taken. On the other hand Mrs. Dallman contends that she is entitled to a divorce and to alimony."

On December 27, 1957, the court again rendered judgment in favor of defendant and cross-complainant on her cross-complaint and awarded her $750 per month for her maintenance and support commencing as of June 16, 1957. The court reserved jurisdiction to reduce the alimony. From this award of alimony, the husband appeals.

On February 24, 1958, pursuant to plaintiff's motion to terminate said alimony, the court modified the interlocutory decree of divorce by reducing the alimony to the sum of $1.00 per year. From this modification, the wife appeals.

These two appeals have been consolidated for hearing and we shall view them as one case with the understanding that any references by us to the records and briefs are to the ex-husband's appeal unless otherwise noted by us.

Upon this narrative of the facts the *first* question with which we are presented is whether the court had the authority and power to allow alimony at all and second, whether, if it did, was it justified in reducing the allowance of $750 per month to $1.00 per year.

The trial judge in ordering the alimony payments in the interlocutory decree of December 27, 1957, relied on the holding in *Scheibe* v. *Scheibe*, 57 Cal.App.2d 336 [134 P.2d 835], in which the court stated: "[T]he award made under Section 139, properly speaking, is not alimony, nor is it merely a substitute for the wife's interest in the community or separate property of the husband. *It is an allowance authorized to be made by way of compensation for a wrong done to the wife, and in that sense is regarded as a penalty imposed upon the husband.*" (Italics ours.)

However, it is to be noted that the cited case arose before the 1943 amendment to section 142 of the Civil Code. Said section provides: "When the prevailing party in the action has either a separate estate, or is earning his or her own livelihood, or there is community property sufficient to give him or her alimony or a proper support, or if the custody of the children has been awarded to the other party, who is supporting them, the court in its discretion, may withhold any allowance to the prevailing party out of the separate property of the other party. *Where there are no children, and either party has a separate estate sufficient for his or her proper support, no allowance shall be made from the separate estate of the other party.*" (The italicized portion of the section is the 1943 amendment.)

■ By the wording of the 1943 amendment, which is mandatory, the court is deprived of any discretion to award alimony from the separate estate of the other party "[W]here there are no children, and either party has a separate estate sufficient for his or her proper support." ■ Because the parties' children had already reached majority before this suit was commenced, the case may be treated as one "where there are no children."

■ It is to be noted that the said amendment to the code does not require that the separate estate should have come from any particular source. The only requirement is that there be a separate estate, without regard to the origin of that estate, which is sufficient for his or her, as the case may be, proper support. The question then is, what was the status of the property at the time the court made its award.

■ "The utmost freedom of contract respecting property exists between husband and wife. ■ They may by contract change the status of their property, or the property of either, from separate to community or from community to separate."

■ And, "A husband may make a transfer of property to his wife whether it be his separate property or community property, and thereby vest the property in her as her separate property." (26 Cal.Jur.2d 124, 126.)

■ By the terms of the property settlement agreement, Mrs. Dallman's share of the community property became her separate property and was her separate property at the time the interlocutory decree was entered. The wife argues that if we construe the 1943 amendment as operating upon this particular kind of separate property, then it would discourage parties from entering into property settlement agreements because it would give the parties a separate estate before the interlocutory decree is entered and thereby deprive the court the power to award alimony. The answer to this is twofold: First, the parties could stipulate in the property settlement agreement that the community property is to retain that character for the sole purpose of the court's power to award alimony, and secondly, the mere fact that a party has a separate estate will not prevent the court's awarding him or her alimony. It is only when such a party has a separate estate sufficient for his or her *proper* support that the court is denied the power to make such an award.

That leads to the final question, so far as the initial award is concerned, which is: Was Mrs. Dallman's almost half-million dollar separate estate sufficient for her *proper* support?

Although Mrs. Dallman has cited many cases in support of her argument that the trial court had the power to make the alimony award in question, an examination of those cases discloses that most of them are not in point because they are not dealing with the 1943 amendment to section 142. However, one case cited should be distinguished.

The case of *De Leshe* v. *De Leshe* (1947), 80 Cal.App.2d 513 [181 P.2d 929], was an appeal from an order modifying an interlocutory decree of divorce by requiring defendant to pay plaintiff the sum of $125 per month for her support and maintenance. The parties had entered into a property settlement agreement whereby the wife received community property worth $20,000 and alimony of $250 per month until the husband's retirement from the Navy, at which time it was agreed she was to receive "such sums per month as may be.

fixed by the Court.'' Upon his retirement, the wife petitioned the court to fix a reasonable sum for her support which sum was fixed at $125 per month, from which award an appeal was taken on the ground, among others, that the award violated the provisions of section 142 of the Civil Code. In affirming, the court held that there was no violation of section 142 because the $20,000 did not produce any considerable income and from the evidence it was held the trial court could have concluded that such income was not sufficient for her support. At page 515, the court said: ''Under such circumstances a wife is not required to exhaust her separate estate before a court can require the former spouse to contribute to her support.''

It is to be noted, however, that the court was merely carrying out the terms of the property settlement agreement entered into between the parties and this was in fact one of the grounds upon which the court rested its decision. Assuming the wife in the cited case would require between $3,000 and $4,000 per year for her proper support, the $20,000 would last only five or six years; while at $1,600 per month, the amount Mrs. Dallman contends was needed for her proper support, her separate property disregarding any income it might produce, would support her for more than 25 years.

*Baldwin* v. *Baldwin* (1946), 28 Cal.2d 406 [170 P.2d 670], was an action for divorce brought by the wife after a Nevada decree had already been granted to the husband who had established a bona fide residence in Nevada. From a judgment denying the divorce, support, and a share of the alleged community property, the plaintiff appealed. Defendant also appealed from an order requiring him to pay plaintiff's attorneys' fees and costs on appeal. Both the judgment and order below were affirmed. At page 413 of the opinion, the court stated: ''. . . it is apparent that the trial court was justified in its determination that plaintiff possessed sufficient means with which to support herself and was not entitled to an allowance for . . . support from the separate estate of defendant. It is provided by section 142 of the Civil Code that where, as here, 'there are no children [of the marriage], and either party has a separate estate sufficient for his or her proper support, no allowance shall be made from the separate estate of the other party.' ''

At this point, in its opinion the court is ruling that by virtue of the 1943 amendment the lower court was without power

to make an award of alimony. But then it added the following language, apparently only as a second ground upon which to deny relief and not as modifying the rule set forth above: "The rule has also been declared that 'The granting and refusing of alimony in actions for divorce is a matter which lies largely in the discretion of the trial court. . . . Before the appellate courts will interfere, it must be made clearly and affirmatively to appear upon the face of the entire record in the case that this discretion has been abused.' "

The property in the Baldwin case with which the court was dealing was never community property and the defendant here argues that this is a sufficiently distinguishing feature to make the rule of that case inapplicable to the present case. But from the language of the court it is apparent that the attempted distinction is without merit.

Because evidence must be taken so that the court may determine what amount is necessary for one's proper support, the issue is one of fact. In the present case, the trial court expressly found that the wife did not have a separate estate sufficient for her proper support "to maintain her station in life and standard of living," and it further found that the husband was financially able to make the alimony payments. Because the trial court so found, this court must affirm that finding if it is supported by any substantial evidence in the record.

The stipulation entered into between the parties contained the following provisions:

"(1) Any and all testimony adduced in open court at hearings in the above entitled action shall be deemed evidence in the cause.

"(2) Any and all affidavits and schedules attached thereto and incorporated therein heretofore filed and presented to Honorable Orla St. Clair shall be deemed evidence of aforesaid with the same force and effect as if the original records containing the data supporting the facts set forth therein had been introduced in evidence and said documents shall be marked as exhibits and become a part of the record in this action."

The stipulation also provided for the submission of the issues on the basis of the record as to divorce, alimony, and source and amount of costs, expenses, and counsel fees of the respective parties.

However, it is to be noted that no testimony was given or

other evidence adduced as to Mrs. Dallman's needs. It is true that her counsel in his letter of July 1, 1956, to Judge St. Clair which was submitted in lieu of an affidavit did include a list of Mrs. Dallman's alleged monthly expenses, which list he also read at the trial, but this was not competent evidence. In opposition to the husband's motion to terminate the alimony payments, Mrs. Dallman did file an affidavit in which the same expenses were again set forth, but such affidavit was not presented to the trial court in the divorce proceeding and cannot accordingly be considered evidence in support of the court's finding.

Mrs. Dallman claimed that she needed $1,600 per month in order to maintain her standard of living. A large portion of this amount is required for the upkeep of the house alone which was awarded to her in the property settlement agreement.

Her list of monthly expenses also included the following items:

| | |
|---|---|
| Telephone | $ 50.00 |
| Beauty parlor | 45.00 |
| Doctor bills, including physiotherapy | 250.00 |
| Recreation and incidental expenses | 200.00 |

as well as others. No competent proof at all was made in support of these items.

In view of this state of the record, we conclude that the trial court's finding to the effect that Mrs. Dallman's separate estate was not sufficient for her proper support was not supported by any evidence whatsoever. A husband is not required to enable a wife to continue to enjoy *every* luxury to which she has become accustomed, but only to "many luxuries which habit has made apparent necessity" (16 Cal. Jur.2d 470). Mrs. Dallman became the owner of a half-million dollar estate and a net income therefrom in the amount of $978 per month. Nevertheless it is her contention that her husband should continue to support her, even if it means exhausting his own separate estate, on the same standard of living to which she had become accustomed and that she should not in any way have to use her separate estate to help meet that standard. As can be seen from the above quotation from California Jurisprudence 2d such is not the law.

The evidence showed that Mr. Dallmans' net income

from July 1, 1957, to June 30, 1958, would be $22,576. Yet during that year, he was obligated as follows:

| | |
|---|---:|
| Interest payable to Mrs. Dallman | $ 7,010 |
| Cash to Mrs. Dallman pursuant to agreement | 2,415 |
| Installment payable to Mrs. Dallman on promissory note (payment for stock) | 4,950 |
| Interest payable to Wells Fargo Bank | 670 |
| Accountants' fees | 900 |
| Total | $15,945 |

This left him a balance of $6,631 or $552.58 per month for his living expenses, life insurance premiums and medical expenses. Yet, he was required to pay $750 per month alimony and the court found he was able to do so. In view of the above, which was not contradicted, it is seen that said finding is not supported by the evidence.

In *Hall* v. *Hall* (1954), 42 Cal.2d 435 [267 P.2d 249], the wife had sued for divorce. From that part of the interlocutory decree which ordered him to pay alimony and attorney's fees, Mr. Hall appealed. The amount of alimony was $350 per month. He was also required to pay $200 per month child support for his two unmarried daughters, aged 16 and 21. After deducting these amounts, plus premiums on life insurance policies, taxes, and other fixed charges, all that remained to Mr. Hall from his salary of $1,250 per month was $270 while he testified that he needed $410 per month to meet his current living expenses. The court reversed the alimony award though it affirmed the judgment in all other respects. The case came up again on a writ of mandate ((1955), 45 Cal.2d 377 [289 P.2d 431]) and in referring to the prior litigation, the court at page 385 stated:

"The reversal of the judgment was predicated upon the conclusion that the circumstances did not justify the award. But this court did not decide nor infer that the wife would be entitled to some lesser amount when evidence was again presented in regard to her rights. On the contrary, and particularly in view of other circumstances which might be shown, justification might be found for awarding *no* amount for support and maintenance."

On this appeal, Mrs. Dallman argues that we should consider not alone the present income of Mr. Dallman but also his past and future income. The implication is that it will increase because it has been higher in the past. In making this argument, she fails to give weight to the fact that the evidence showed the family corporation had been steadily los-

ing money for several years and apparently, though not at the trial or on this appeal, she recognized that fact since in the property settlement she refused to accept half of the husband's stock in said corporation, but instead insisted upon his keeping the stock and giving her $150,000 instead, which sum he gave in the form of a promissory note and on which he is obligated to pay interest.

In conclusion we find that the evidence does not sustain the finding (1) that the wife did not have a separate estate sufficient for her proper support, and (2) that the husband was financially able to pay the sum of $750 per month alimony to the wife. Accordingly, as it seems clear to us on the evidence in the record that the wife had ample means with which to properly support herself, the court, by virtue of the mandatory language of Civil Code, section 142, erred in awarding, in the judgment, alimony in the sum of $750 per month. Therefore, the interlocutory judgment in the appeal, Civil Number 18242, to the extent it awards alimony in the sum of $750 per month, is reversed.

However, as to the order modifying the award by reducing alimony to $1.00 per year on the husband's petition to terminate alimony, it is to be noted that the wife only appealed (Civ. No. 18246) ; that is to say, the husband did *not* appeal. Consequently, we are not called upon to determine the power of the lower court to enter such an order in the first place but only to determine whether the court erred in reducing the alimony originally awarded. From what has been hereinabove said with respect to the appeal by the husband, we conclude that it was not error to reduce said alimony and the order must therefore be affirmed.

Bray, P. J., and Wood (Fred B.), J., concurred.