[Civ. No. 21084. First Dist., Div. Two. Dec. 18, 1963.]

MAXINE DOW HUTCHINSON, Plaintiff and Respondent,
v. J. ALBERT HUTCHINSON, Defendant and Appellant.

J. Albert Hutchinson, in pro. per., for Defendant and Appellant.

James C. Purcell for Plaintiff and Respondent.

AGEE, J.—The parties intermarried on February 27, 1937, and separated on April 12, 1961. Plaintiff commenced this action for divorce on June 30, 1961, charging extreme cruelty in general terms. Defendant cross-complained on the same ground. Defendant is a lawyer and represents himself.

An interlocutory decree of divorce was granted to plaintiff on June 21, 1962. Defendant has appealed therefrom. The trial court made findings that plaintiff had not been guilty of extreme cruelty toward defendant and denied a divorce to him. Defendant complains of this but states that he "declines either to summarize or to quote the evidence supportive of his cross-complaint seeking a divorce in his own behalf." We shall likewise decline except to state that the evidence sufficiently supports the findings as to the cross-complaint.

*Sufficiency of evidence of defendant's cruelty.* Plaintiff testified that defendant had administered repeated beatings upon her over a period of years, the last one being about a week before the separation; that these beatings frequently left her with visible bruises and marks upon her face and body; that on one occasion upon returning from a bar association meeting, she had been "beaten to a pulp" by defendant; that she would get up and defendant would knock her down again; that this conduct took place in front of their children; that defendant used obscene language and called her vile names in the presence of the children; that defendant frequently drank intoxicating beverages to excess; that a few days before the separation, defendant told plaintiff that he was having an affair with a 20-year-old girl; that two days later, after checking on the girl, she told defendant that she had had all she "was going to take and to get out of the house."

*Corroboration of cruelty.* This was supplied by the

witness Williams. He testified that in 1956 or 1957, he saw
defendant knock plaintiff down in their living room and
heard him call her "foul and vulgar names"; that defend-
ant attempted to strike her again after she got up but he
(Williams) prevented defendant from doing so; that on
many occasions, beginning with a trip to Mexico with them
in 1947, he was present when defendant became violent and
abusive toward plaintiff and used foul and vulgar language
in addressing her. This testimony is sufficient to comply with
the law requiring corroboration. (Civ. Code, § 130; *Jones* v.
*Jones,* 135 Cal.App.2d 52, 57-58 [286 P.2d 908]; *Steele* v.
*Steele,* 132 Cal.App.2d 301 [282 P.2d 171]; *Hayes* v. *Hayes,*
181 Cal.App.2d 634, 642 [5 Cal.Rptr. 509].)

Plaintiff has, of course, set forth much more testi-
mony on this subject in her brief but we think it is unneces-
sary to do so in this opinion. It is sufficient for us to state
that the finding of extreme cruelty by defendant toward
plaintiff is supported by substantial evidence.

*Remoteness* in time as to some of the acts of cruelty
is urged by defendant as a ground of exclusion. However,
these acts showed a pattern of abusive conduct over a period
of years, topped off with defendant's statement that he was
currently having an affair with another woman, and the evi-
dence of the earlier acts was properly admitted. As stated in
*Del Ruth* v. *Del Ruth,* 75 Cal.App.2d 638, 647 [171 P.2d 34]:
"Furthermore, remoteness of the time of commission of acts
of cruelty is not of itself a sufficient ground for excluding
evidence of such acts where questions of condonation and the
revocation thereof must be decided."

*Condonation* was raised by the defendant. A complete
answer to this point is found in section 118 of the Civil Code,
which provides as follows: "Where the cause of divorce con-
sists of a course of offensive conduct, or arises, in cases of
cruelty, from excessive acts of ill-treatment which may, ag-
gregately, constitute the offense, cohabitation, or passive
endurance, or conjugal kindness, shall not be evidence of
condonation of any of the acts constituting such cause, unless
accompanied by an express agreement to condone." The
court found that plaintiff "did not condone the actions of
said defendant" and the evidence sufficiently supports such
finding.

*Adultery as extreme cruelty.* It was an act of cruelty
for defendant to tell plaintiff that he was having an affair
with another woman. This is particularly so when the state-

ment is true. Plaintiff promptly investigated and found that it was true. Any doubt about this was dispelled by the frank testimony of the woman herself.

 The question of whether plaintiff's knowledge of defendant's immoral conduct caused her "grievous mental suffering" (Civ. Code, § 94) is for the trial court to determine. But we have no doubt as to the admissibility of the evidence showing how such knowledge had been acquired. (*San Chez* v. *Superior Court* (1957) 153 Cal.App.2d 162, 165 [314 P.2d 135]; *Taylor* v. *Taylor,* 82 Cal.App.2d 657, 659 [186 P.2d 1015].)

 *Provocation.* Whether plaintiff provoked defendant into committing acts of cruelty is a fact question which was determined adversely to defendant. The court expressly found that the actions of defendant with respect to such cruelty were "without provocation or justification." This finding is supported by substantial evidence.

 *The home.* Defendant contends that the court was without jurisdiction to award the home to the plaintiff because the evidence is insufficient to support the finding that it was community property.

The parties stipulated at the trial that the property was purchased with earnings of the defendant made after the marriage. Plaintiff did not know that the purchase deed ran to them as joint tenants. She testified that, inasmuch as defendant was a lawyer, she left such matters to him.

 The general principle of law applicable to the situation has again been stated by our Supreme Court in the recent case of *Machado* v. *Machado* (1962) 58 Cal.2d 501, 506 [25 Cal.Rptr. 87, 375 P.2d 55], as follows: "Although a joint tenancy deed is not conclusive as to the character of real property, it creates a rebuttable presumption that it is held in joint tenancy. The presumption created by the deed cannot be overcome by testimony of the hidden intentions of one of the parties, but only by evidence *tending to prove a common understanding* or an agreement that the character of the property was to be other than joint tenancy." (Italics ours.)

 Plaintiff's evidence in support of such a *common* understanding follows. She alleged in paragraph IV of her complaint as follows: "That there is community property of the parties consisting of stocks, real property, equities in insurance policies, retirement benefits, household furniture, an automobile, an interest in the accounts receivable and in

the practice of the defendant as an attorney, an interest in club memberships, and other property, the exact whereabouts and value of which are unknown to the plaintiff.''

Defendant answered under penalty of perjury, as follows: ''Defendant admits the allegations of paragraph IV, except the concluding allegation, namely, 'the exact whereabouts and value of [which] (community property) are unknown to plaintiff,' which statement is denied.''

The only real property owned by the parties was the home. Defendant makes no claim that he was referring to any other real property in his answer to plaintiff's complaint. It may also be noted that plaintiff prayed in her complaint that she be awarded ''the home of the parties hereto.''

Furthermore, in his cross-complaint, defendant affirmatively alleges that the home was community property by expressly incorporating said paragraph IV of plaintiff's complaint therein ''to the extent admitted by his answer.''

A pretrial conference was held on August 31, 1961. While the order which followed recites that one of the issues is the ''nature, extent and disposition of the community property of the parties,'' there is nothing to indicate that defendant had changed his position with respect to the character of the home property. He was contending that certain stocks and a bank account were his separate property. If he then had any contention that the home property was not community, the record fails to disclose it.

On July 10, 1961 defendant executed an affidavit in the form of a ''husband's questionnaire'' in which he listed the home in the space allotted for community assets. Under the heading, ''Separate Property,'' opposite the printed subhead ''Mine, net value,'' he answered ''$8,984.43.'' This referred to certain *personal property*. There was no reference therein to any undivided interest in real property.

On September 26, 1961, defendant's deposition was taken. Plaintiff's counsel asked the following question and defendant gave the following answer: ''Q. What is your position as to the nature of the property? Is it joint tenancy property with an undivided interest? A. I am inclined, by way of experience, to feel that all the evidence is that it was to become community.''

Before signing the deposition, defendant changed ''community'' to ''joint tenancy.'' The significance and the weight to be given this incident was for the trial court. It

may have considered that a lawyer would not have made such a slip of the tongue unless it were of the "Freudian" type.

While defendant has attempted to explain the foregoing admissions as to the community character of the home property, the trial court may not have accepted his explanation. We, of course, do not weigh the evidence and must view it on appeal in the light most favorable to the prevailing party.

The question as to the "common understanding" between a husband and wife as to whether their home is their community property, despite the designation of themselves as "joint tenants" in the deed by which they were granted the property, has been before our appellate courts on many occasions.

The guiding rule of law has been laid down very clearly. (Cf. *Machado* v. *Machado, supra.*) The difficulty lies in the application of the rule to the particular facts involved.

We think that in the instant case the trial court's finding that the home was the community property of the parties is supported by substantial evidence, i.e., that this was their common understanding. ■■■ As held in *Estate of Sill,* 121 Cal.App. 202, 203-204 [9 P.2d 243], such understanding is not required to be in any particular words or be attended with any particular formality.

*Knego* v. *Grover* (1962) 208 Cal.App.2d 134 [25 Cal.Rptr. 158] is a recent case which reviews a number of authorities upon this question. It is stated therein that the understanding of a husband and wife respecting the status of their property is determinative of that status; that such an understanding may be express or implied and "may be inferred from their conduct or declarations"; that, on appeal, "if there is any substantial evidence in the case, including any inferences reasonably deducible from the facts established thereby, which supports a questioned finding, it will be sustained." (Pp. 141-142.) (See also: *Linville* v. *Linville,* 132 Cal.App.2d 800, 802 [283 P.2d 34]; *Jansen* v. *Jansen,* 127 Cal.App. 294, 298 [15 P.2d 777].)

■■■ The trial was concluded on January 3, 1962. Just before defendant rested, the trial judge asked him if he would supply certain information about the *stock.* Defendant said that he would. At the conclusion of the testimony, the following statements were made: "MR. PURCELL [counsel for plaintiff] : That's all. We will rest, your Honor. MR. HUTCHINSON : We have nothing in rebuttal, your Honor. Matter submitted."

On or about March 5, 1962, defendant mailed his "Declaration" to plaintiff's attorney and attached thereto some data on one stock.

*However,* defendant, as a part of the same communication, also attached a copy of an unrecorded deed of the subject property from himself, as grantor, to himself and the two children, as grantees. This deed purports on its face to have been executed on November 9, 1961.

Defendant did not disclose the alleged existence of this deed to the court or to plaintiff's attorney at any time before or during the trial. Neither the deed nor any testimony concerning it was ever offered in evidence and defendant never made any motion to reopen his case. We do not consider that it is a part of the record on the appeal from the interlocutory decree.

*Stocks* bought by defendant were placed in his name alone. *All* of such stocks were acquired during marriage. The trial court made a finding that they were community property and divided them equally between the parties. This finding is supported by the presumption that property acquired during marriage by a husband is community property. "This presumption is fundamental in the community property system and is an integral part of the community property law . . ." (*Wilson* v. *Wilson,* 76 Cal.App.2d 119, 126 [172 P.2d 568]).

Defendant gave some rather vague testimony as to the source of the money used to purchase the stocks, saying in general that some of it came from law fees that came "dribbling in" over a period of years as payment for legal work done before marriage and proceeds from the lease and sale of certain ranch property which he had received from his parents.

The record amply justifies the following statement made to defendant by the court after defendant had given his testimony on the subject: "I have to have more information as to dates of the purchase of the stock, or the source of the funds that you have given me, because the statements are too general, both as to time and to amounts and as to source. You have to admit that it is not very helpful."

The "information" which the court requested was attached to defendant's "Declaration" of March 1, 1962, which declaration is the one utilized by defendant to call to the court's attention the theretofore undisclosed deed.

The aforesaid information as to the stocks added nothing.

It shows the purchase of some preferred stock in The Curtis Publishing Company in 1944, seven years after the marriage, and a notice that said stock had been called for redemption, which notice was dated August 31, 1956.

It was defendant's burden to establish that the stocks were in fact his separate property. (*Wynn* v. *Wynn*, 170 Cal. App.2d 484, 488 [338 P.2d 930].) The trial court held in accordance with the presumption. In our opinion, it was justified in so doing.

A like uncertainty and confusion existed with respect to a bank account standing in defendant's name alone. The court found this to be community property *but* awarded the entire account to *defendant*. Even if the finding was not proper, which we do not believe, defendant was not prejudiced thereby.

*Other bank accounts.* Defendant asserts that the parties had a savings account and a checking account in the Crocker-Anglo National Bank as joint tenants, which accounts were closed out by plaintiff immediately following the separation of the parties. He then adds that "[t]he amount and disposition of these balances are not disclosed by the record."

We have been unable to find anything in the record which supports defendant's statement as to the existence of the savings account. It was not made the subject of any issue during the trial. The judge asked defendant if "all we are concerned with is existing funds" and defendant answered in the affirmative. There is nothing in the record which would require the trial court to make any disposition as to the savings account, even if such an account had existed at one time.

The parties did have a joint checking account in the Crocker-Anglo, which was used for household expenses. The bank statement shows a balance of $210.38 as of March 24, 1961. There are no further entries shown. Between this date and the date of separation, April 12, 1961, it is reasonable to assume that such balance was used up in paying for household expenses. Moreover, as stated above, all that the parties were concerned with at the time of trial was money then in existence.

On May 9, 1961 plaintiff opened a checking account in her name alone, making an initial deposit of $529.34. This *exact* amount was withdrawn by plaintiff on the *same* day from a savings account in her name, as trustee for the chil-

dren. At the time of trial the balance in the checking account was $110.69. While no finding was made with respect to the character of this balance, there is nothing in the record that would support a finding that defendant had any interest therein.

 *Retirement fund.* Defendant had been employed in the Attorney General's office for a number of years during the marriage. Prior to their separation, the parties had disposed of their respective community interest therein by agreeing with the State of California that defendant was to receive $113 per month for life and, upon his death, plaintiff would receive one-half of such amount for her life.

Defendant advised the court that this arrangement with the state was *irrevocable.* Plaintiff made no objection to such arrangement. Therefore, there was nothing before the court for disposition and hence there was no necessity to make any finding with reference thereto.

 *Insurance policies.* The trial court found that the insurance policies on defendant's life were community property. One of these policies was awarded to defendant as his separate property. Plaintiff was awarded a one-half interest in the remaining policies. Defendant complains that no disposition was made of the dividends which had accumulated on these policies and been retained by the insurance companies. However, such accumulated dividends would follow the policies and would be subject to the same disposition. There is nothing in the record to indicate any reason why this would not be so and we do not believe that it was necessary to make any separate disposition of such dividends. (See *Cronk* v. *Cronk,* 210 Cal.App.2d 683, 688-689 [27 Cal.Rptr. 229].)

 *Alimony.* The interlocutory decree awarded plaintiff $500 per month as and for her support. Defendant contends that section 142 of the Civil Code precludes an award of alimony in the instant case because plaintiff has sufficient separate estate from which she can support herself.

Defendant relies upon *Baldwin* v. *Baldwin,* 28 Cal.2d 406 [170 P.2d 670], and *Dallman* v. *Dallman,* 170 Cal.App.2d 729 [339 P.2d 636]. Section 142 contains two sentences, the second of which being the one involved in these cited cases. It provides as follows: "Where there are *no* children, and either party has a separate estate sufficient for his or her proper support, no allowance *shall* be made from the separate estate of the other party." (Italics ours.)

In *Baldwin* there were no children and in *Dallman* the children had reached majority and hence were treated as "no children" within the purview of the section. Therefore, the question in those cases was whether the wife had "a separate estate sufficient for ... her proper support."

Here, of course, there are two minor children and hence only the first sentence of section 142 applies. It provides as follows: "When the prevailing party in the action has either a separate estate, ... or there is community property or quasicommunity property sufficient to give him or her alimony or a proper support, or if the custody of the children has been awarded to the other party, who is supporting them, the court *in its discretion, may* withhold any allowance to the prevailing party out of the separate property of the other party." (Italics added.)

Section 142 thus places plaintiff within the class of those to whom alimony may be awarded even though she may have sufficient estate from which to support herself.

The *amount* of alimony to be awarded is also within the discretion of the trial court. We are satisfied that there was no abuse of this discretion herein. Upon the children attaining their majority, defendant will be in a position to urge the applicability of the last sentence of section 142, as interpreted by *Dallman* v. *Dallman, supra.*

It is true that plaintiff is currently receiving dividends in excess of $9,000 per year from certain unlisted stock which she had inherited. Defendant's net income in 1960 from his law practice was in excess of $23,000. He has made no claim that it is getting any lower.

The record shows that the sum of $1,250 per month is required in order for plaintiff to maintain the home for herself and the two children in accordance with the standard of living which had been established by defendant before the separation. We need not go into detail as to this, but both parties apparently desire that the children be given the "advantages" customarily provided for children of professional men.

Support orders are subject to modification as and if conditions change. We do not believe that the trial court abused its discretion in fixing the present amount of alimony at $500 per month.

■■ *Attorney's fees.* The interlocutory decree ordered defendant to pay to plaintiff's attorney the sum of $4,000 as and for his fees. This was in addition to the sum of $750

which had previously been ordered on account of such fees. Defendant contends that the amount is unreasonable. We do not agree.

The fixing of the amount of attorney fees is largely a question of fact to be left to the discretion of the trial court. (*Frank* v. *Frank* (1963) 213 Cal.App.2d 135, 137-138 [28 Cal. Rptr. 687]; *Jones* v. *Jones,* 135 Cal.App.2d 52, 64 [286 P.2d 908]; *Heck* v. *Heck,* 63 Cal.App.2d 470, 476 [147 P.2d 110].) The record herein contains ample evidence to support the amount allowed. The skill and ability of the attorney, the complexity of the issues with which he is required to cope, and the success of his efforts on behalf of his client are important factors.

It is true that plaintiff had sufficient separate property from which she could have raised the amount of her attorney's fee but this fact does not prove an abuse of discretion by the trial court in making the allowance complained of. (*Cohen* v. *Cohen,* 156 Cal.App.2d 191, 194 [319 P.2d 66]; *Frank* v. *Frank, supra.*)

██ *Costs of investigation.* Section 137.3 of the Civil Code provides in pertinent part as follows: ''During the pendency of any action ... for divorce ..., the court may order the husband ... to pay such amount as may be reasonably necessary for the cost of maintaining or defending the action *and* for attorney's fees ...'' (italics ours).

Quite obviously, the reference to ''the cost of maintaining or defending the action'' means something other than and in addition to attorney's fees. Also, such a cost means something other than and in addition to what are referred to as ''costs and necessary disbursements in the action.'' (Code Civ. Proc., § 1033.)

In *Heck* v. *Heck,* 63 Cal.App.2d 470 [147 P.2d 110], an award of $630 as a fee to an auditor employed by the wife was upheld. The court stated, at page 477: ''Section 137 of the Civil Code provides in effect that a trial court in its discretion may require the husband or wife to pay the other party any money necessary to prosecute or defend the action.''

In *Cohen* v. *Cohen,* 156 Cal.App.2d 191 [319 P.2d 66], the husband was ordered to pay $600 to an appraiser and $1,000 to an accountant, both of whom were employed by the wife.

While the expenses in these cases were incurred for an investigation of the financial aspects of the case, we see no difference, so far as section 137.3 is concerned, between that

type of investigation and one which is directed to the alleged conduct of the parties. It was so held in *Crevolin* v. *Crevolin* (1963) 217 Cal.App.2d 565, 573-574 [31 Cal.Rptr. 622].

The investigator testified that $2,500 was a reasonable charge for his services. The trial court awarded $750. One phase of these services was devoted to ''defending the [cross] action'' brought by defendant. The investigator was furnished with a copy of defendant's pretrial deposition and he investigated the charges against plaintiff which defendant made therein. We point this out because it appears that, as to the investigation of defendant's conduct, more time was spent than was necessary. Adultery was not charged in the complaint and its limited relevancy herein has been discussed above.

In *Heck* v. *Heck, supra,* the court stated: ''While the fees paid to the auditor seem liberal, the necessity for the audit and the time spent upon it were more apparent to the trial court than they are here. As the question of compensation for the auditor as well as the necessity for the audit (which clearly appears) were matters committed to the discretion of the trial judge, and as no abuse of that discretion has been made to appear, we cannot reverse that portion of the judgment.'' (P. 477.)

*Joint obligations of the parties.* There was no reason to make any reference thereto in the findings or the decree. The income tax for 1960 had been paid. Plaintiff testified that she had paid the final installment herself and had previously given defendant other moneys for that purpose. As to the 1961 return, it had not been prepared at the time of trial (December 20, 1961). Plaintiff testified that she intended to file a separate return covering this period and would pay her own income tax.

Defendant was ordered, on July 20, 1961, to pay the taxes and insurance on the home property pendente lite. This is the extent of his liability in this respect.

Whatever equities existed as between charges against the community property of the parties and the separate property of the plaintiff were a part of the evidence before the court and must have been taken into consideration by it in making the apportionment which it did. In our opinion, the record herein does not call for any more specific provisions than were made.

*Child custody.* The interlocutory decree provided that the care, custody and control of the two minor children

be awarded to plaintiff, subject to defendant "having all reasonable rights of visitation with said children."

Defendant does not object to plaintiff having the *physical* custody of the children but he contends that the *legal* custody of the children should have been awarded jointly.

The trial judge stated that he thought that such a provision would lead to "serious meddling" and "perpetual acrimony" between the parties and he denied defendant's request for joint legal custody. We do not think the trial court abused its discretion in so doing (Civ. Code, § 138).

■ *Wording of decree.* Defendant states that the interlocutory decree "attempts to award the family properties in advance of the final decree." This is incorrect.

The interlocutory decree provides "[t]hat the community property of the parties hereto hereinafter described, *should be,* and upon the entry of the final decree, shall be set aside and divided as follows, to-wit:" (italics ours).

The general rule is that the interlocutory decree should only provide for what division of the community property *should be made* in the final decree. This is clearly the rule where there has been, as here, an appeal from the interlocutory decree. (*Wilson* v. *Wilson,* 76 Cal.App.2d 119, 132 [172 P.2d 568]; *Brown* v. *Brown,* 177 Cal.App.2d 387, 389 [2 Cal.Rptr. 255].) The wording of the interlocutory decree, quoted above, sufficiently recognizes this rule and disposes of the criticism made by defendant.

■ *Prejudice of trial judge.* Defendant contends that the trial judge manifested a prejudice against him. We do not agree.

The dual capacity in which defendant was acting presented some problems. The judge on several occasions urged defendant to obtain counsel to assist him, offering to continue the trial if he would do so. Defendant feels that this is evidence of the judge's prejudice against him. On the contrary, it was good advice and would have helped the defendant in presenting his case.

Defendant also asserts that the trial judge had heard some rumors about the "affair" referred to above before the trial commenced. The judge denied this, stating that all that he had heard about the case before trial was that there had been efforts to settle it before other judges but that one of the difficulties encountered was that defendant was representing himself.

We think that the guide applicable in considering this con-

tention as to prejudice is, as stated in *Weil* v. *Weil*, 37 Cal.2d 770, 786 [236 P.2d 159], that it is "essential that each case turn upon its own facts." We have examined the entire record and, in our opinion, it does not reveal any conduct of the trial judge which would require a reversal.

*Other appeals.* Pursuant to oral stipulation at the time of argument, defendant's appeals from the order taxing costs and the pendente lite order as to alimony, child support, etc., are dismissed.

■ Defendant's appeal from the order restraining him and his law partner from filing, recording or delivering the purported deed of November 9, 1961, was not argued in his briefs or in his oral argument before us. We have not been advised of any reason why the order was not proper. Nor has defendant indicated that he was in any way prejudiced by such order. We deem this appeal to have been abandoned and it is therefore dismissed. (3 Witkin, Cal. Procedure, "Appeal," § 150, "Necessity of Legal Argument.")

The interlocutory decree of divorce is affirmed.

Shoemaker, P. J., and Taylor, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 5, 1964.