[Civ. No. 17716. Second Dist., Div. One. Mar. 5, 1951.]

TREVA E. PROPER, Appellant, v. LEE A. PROPER, Respondent.

Harvey R. McKee and Robert P. Dockeray for Appellant.

Walter H. Young for Respondent.

WHITE, P. J.—Plaintiff and appellant brought an action for separate maintenance upon the ground of desertion. Defendant answered that he had secured a divorce in Reno, Nevada, in November of 1947, and further set forth acts of cruelty by plaintiff by way of recrimination. After trial before the court it was adjudged that the Nevada divorce obtained by defendant was based on a "bona fide domicile" and is entitled to full faith and credit. Plaintiff has appealed from the judgment and from an order made subsequent thereto denying her application for support money, costs and attorney's fees pending the prosecution of her appeal from the judgment.

Appellant's main contention is that the finding . of the trial court that respondent was a bona fide resident of Nevada

at the time he instituted his divorce action is not supported by the evidence. It is urged that the evidence conclusively shows that he went to Nevada for the purpose of obtaining a divorce.

The parties were married in 1919. Respondent entered the Army from Los Angeles in 1942. In May, 1947, he returned to the United States from Germany, and went directly to Reno, Nevada. In July, 1947, being still a member of the armed forces, he returned to Germany, having in the interim arranged for the filing and prosecution of the divorce action. In May, 1948, after obtaining his divorce in Nevada, he married a German woman and returned with her to the United States.

For the following reasons appellant contends that the judgment is against the evidence:

"1. Respondent and appellant were residents of and domiciled in the State of California, at the time respondent joined the Armed Forces.

"2. At the time respondent joined the Armed Forces he was a member, and had been for some time, of the Police Department of Los Angeles and at the time he joined the Armed Forces he did not resign his position and at no time thereafter did he resign his position.

"3. Respondent returned to the United States on May 1, 1947, and on May 3, 1947, he arrived in Reno, Nevada, not having been sent there by any direct order of the Armed Forces.

"4. Within a day or two after arriving in Reno he went to an attorney and directed the commencement of divorce proceedings against the appellant.

"5. He left Reno not later than the first week of July, 1947, and returned to Germany in the Armed Forces. He was not present in Reno at the time of the trial of his divorce action and had made arrangements with his Nevada attorneys to proceed with the action during his absence by having his deposition taken while he was still in Reno and also by having another deposition taken in Munich.

"6. On the basis of respondent's testimony, he was the father of a child born to Barbara Bader in Germany prior to the time that he returned to the United States and went to Nevada to secure his divorce. Shortly after his return to Germany and on May 4, 1948, he married Barbara Bader and with her and their child returned to the United States on May 30, 1948.

"7. On his way from the East Coast to Los Angeles he spent two or three days in Nevada and almost immediately upon his return to Los Angeles, resumed his duties with the Los Angeles Police Department, a position which he had never resigned."

It is appellant's position that these facts and circumstances point to but one conclusion—that respondent never acquired nor intended to acquire a bona fide residence in Nevada, and that his unsupported statements of a different intention are not sufficient to overcome the effect of the facts and circumstances themselves.  ■  The record, however, contains other evidence supporting his declared intention which, in our view, brings into play the well-established rule that "The power of an appellate court ends with respect to the facts when it determines that there is substantial evidence which supports the trial court's findings." (*De Young* v. *De Young*, 27 Cal.2d 521, 526 [165 P.2d 457], and cases there cited.)

■  It appears from respondent's testimony that after entering the armed services in 1942 he went to Reno for several days and observed ski resort facilities and noted the possibilities of that type of business in that area. In 1943 he again went to Reno and considered the possibility of making it his home and establishing a sport center there. In 1943 he was transferred to Germany and was stationed at a famous ski resort area, where he and some brother officers conceived a plan to establish a ski resort in the Reno area when they should be released from the service.

In May 1947, respondent was returned to the United States on "terminal leave." The policy of the Army at that time was that a man who had served three years in the European theater would not be reassigned thereto until he had spent six months in the United States. At the time respondent arrived in New York he was entitled to 120 days leave of absence, for which he applied, indicated to the Army that he was going to Reno, and actually went to Reno in pursuance of the plan to take preliminary steps towards establishing a ski resort. Upon his arrival in Reno he applied for release from military duty, and also applied for a reserve officer's training assignment to the University of Reno in the event he was not immediately released from the service.

After respondent had been in Reno for a few days, he consulted an attorney with a view to obtaining a divorce. During

his stay, he visited the ski area almost every day, examined sites for ski resorts, consulted various people concerning the area, and had correspondence with his associates in Germany with reference to obtaining ski equipment. He testified that when he went to Reno, Nevada, it was with the intention of making that area his permanent home.

On July 10, 1947, respondent had not been released from military service nor did he get his second choice of R.O.T.C. training in Nevada, but was reassigned to the European theater. He thereupon made arrangements with his attorneys in Nevada to proceed with depositions and complete the divorce action. He returned to the United States in May, 1948, remained in New York for a week, and then went to Nevada for the purpose of settling there, but upon arriving at Reno found the situation had changed economically, and he and his associates concluded that they had missed their opportunity in the ski resort business and abandoned the project. Respondent thereupon came to Los Angeles and resumed his employment as a police officer.

From the time of respondent's induction into the Army in 1942 until his return to Los Angeles in 1948, he was actually out of the State of California except for two short occasions when he was in California on military business. During this period he did not vote in California, apply for an absentee ballot, own any real estate in Los Angeles or have any business or commercial venture there. He was never stationed in Nevada by military orders, but went there of his own free will.

Respondent's intention to get a divorce from appellant was first formed in 1937. He testified to a long period of extreme cruelty towards him, consisting of intoxication, violence, profanity and association with other men.

The situation here presented is similar to the cases of *Coleman* v. *Coleman*, 92 Cal.App.2d 312 [206 P.2d 1093], and *Windsor* v. *Windsor*, 42 Cal.App.2d 464 [109 P.2d 363]. As was said in the latter case, at page 466, "The most that can be said is that under the evidence the trial court might have decided the disputed issue of fact either way and under such circumstances, an appellate court may not interfere after the trier of the facts has made its determination." ■ The circumstances here relied upon by appellant merely tended to create a conflict in the evidence and this being so, the finding of the trial court cannot be disturbed. (*De Young* v. *De Young, supra,* p. 525; *Baldwin* v. *Baldwin*, 28 Cal.2d 406,

410 [170 P.2d 670]; *Cardinale* v. *Cardinale,* 8 Cal.2d 762, 766 [68 P.2d 351]; *Collins* v. *Maude,* 144 Cal. 289 [77 P. 945]; *Estate of James,* 99 Cal. 374 [33 P. 1122, 37 Am.St.Rep. 60].)

With respect to appellant's second contention, that it was error to deny her temporary alimony, court costs and counsel fees for the prosecution of this appeal, reliance is placed upon *Baldwin* v. *Baldwin, supra.* In that case the wife appealed from a judgment upholding the validity of a Nevada divorce secured by the husband, and the husband appealed from an order awarding costs and attorney's fees to the wife incident to her appeal. The Supreme Court affirmed both the judgment and the order. The court distinguished cases to the effect that before alimony or suit money can be awarded, the person seeking it must prove "existence of the marriage" with the other party to the proceeding, by saying: "In none of the three cases was an issue presented as to the validity of a divorce decree secured by one party following an admitted marriage to the other. Here the marriage relationship admittedly existed at the time of, and continued for several weeks following, the filing by plaintiff of her divorce complaint in this state, and the chief defense offered by defendant to plaintiff's requests for relief is that he thereafter secured in another state a decree of divorce from her. It is our view that under such circumstances, *and upon a proper showing otherwise,* plaintiff should not be denied the payment from defendant of funds to enable her to properly prosecute an appeal from the judgment determining the fact and effect of the Nevada decree. . . . It is now the law of this state that it is only after such an appeal has been finally determined (or the judgment of a California trial court adjudicating such issue has become final) that the validity or lack thereof of the Nevada decree and its effect—and consequently the marital status and reciprocal obligations of the parties in this state—can be conclusively settled. . . ." (Emphasis added.)

We do not believe that the cited case can be construed as holding that in the circumstances here presented the denial of the award sought is necessarily error. The Supreme Court was dealing with a case in which an award had been granted. It held that such an award should not be denied "upon a proper showing otherwise." Concluding its opinion, the court said: "We are of the view that under all of the circumstances presented, it cannot be said that as a matter of law plaintiff

failed to establish her need for the award or that the trial court was unwarranted in making it. . . .'' The court then referred briefly to the financial condition of the parties and continued: ''While the circumstances would well have supported a contrary determination we are of the view that those same circumstances do not necessarily require the conclusion that the trial court abused its discretion in making the disputed award.''

Thus it appears that the question remains one for the application of the sound legal discretion of the trial court, and that an order either granting or denying the award must be upheld in the absence of a showing of an abuse of that discretion. (Civ. Code, § 137; *Blank* v. *Blank,* 129 Cal.App. 403 [18 P.2d 956].) In the case last cited there was a sharp conflict in the evidence as to the financial worth of the respective parties. It was held that although the evidence might have been legally sufficient to support an award, nevertheless the trial court acted within its legal discretion in denying it, and in the absence of an abuse of discretion, the appellate court was without authority to disturb the order.

Section 137 of the Civil Code specifically provides that the court may ''in its discretion'' require the husband to pay any money necessary to enable the wife to prosecute or defend the action. And this applies to the making of an allowance to the wife to cover the costs of an appeal from a judgment denying her a divorce (*Stewart* v. *Stewart,* 156 Cal. 651 [105 P. 955]; *Newlands* v. *Superior Court,* 171 Cal. 741 [154 P. 829]). Even though it be conceded in the present action that if the trial court had seen fit to grant this motion, the evidence adduced in her behalf would have been legally sufficient to sustain such order on appeal, such a situation confers upon us no authority to substitute our judgment for that of the judge, who, under well settled rules, is the sole arbiter of the weight of the testimony and the credibility of witnesses.

Unable as we are to find any legal ground upon which it may be held that the rendition of the order adverse to appellant constituted an abuse of discretion, we are not authorized to revise the lower court's order. In the present case, the judge who denied the award had before her the entire transcript of the trial of the cause as well as the affidavit and counteraffidavit presented on the hearing of the application for the award. There was substantial evidence to show the meager resources of the respondent, that appellant had been receiving an allotment from him of approximately $100 per

month until his separation from the service in June, 1948; and that appellant had received a substantial sum in war savings bonds.

For the reasons stated, the judgment and order appealed from are, and each is, affirmed.

Doran, J., and Drapeau, J., concurred.