[Civ. Nos. 36775, 37404. Second Dist., Div. Five. May 17, 1972.]

In re the Marriage of JOSEPHINE and THEODORE LEFF.
JOSEPHINE LEFF, Appellant, v.
THEODORE LEFF, Respondent.

(Consolidated Appeals.)

## COUNSEL

Morton L. Greenberg and Mortimer Braus for Appellant.

Long & Levit, Richard B. Wolff and David C. Bogert for Respondent.

## OPINION

**REPPY, J.**—On August 16, 1967, Josephine Leff (hereinafter, Wife) filed a divorce complaint against her then husband, Theodore Leff (hereinafter, Husband) on the grounds of extreme cruelty and adultery, alleging a marriage which was entered into on July 23, 1966, in Las Vegas, Nevada, and which culminated in separation on August 9, 1967.

In his first amended answer (filed December 19, 1967, pursuant to order of the court) Husband alleged that both parties were residents of Nevada, that he had commenced an action for divorce there on September 22, 1967; that Wife was personally served in California with a copy of a summons and complaint in the Nevada action pursuant to an order for publication of summons (Husband's Exhibit C); and that a judgment of divorce had been awarded to Husband in Nevada on October 24, 1967.

On July 28, 1969, the trial of Wife's California divorce action commenced with a stipulation that the first issue to be resolved was the validity of the Nevada divorce decree. After testimony was taken on the issue of jurisdiction of the Nevada court, the trial court found:

"That [Husband], from August 30, 1965, to and including September 27, 1967, was a continuous bona fide resident of the State of Nevada.

"That [Husband] filed an action for divorce against [Wife] in Pershing County, Nevada, on September 27, 1967.

"That [Husband], on September 27, 1967, and for more that six weeks prior thereto, was a bona fide resident of the County of Pershing, State of Nevada.

"That on October 24, 1967, [Husband] was granted an absolute decree of divorce from [Wife] by order of the 6th Judicial Court of the State of Nevada, in and for the County of Pershing."

Based on these findings the trial court concluded that the Nevada divorce decree was entitled to full faith and credit in California. Pursuant to these findings and conclusions the trial court gave judgment for Husband, ordering that Wife take nothing by reason of her complaint.

Wife appeals from the judgment as entered.

## I

Wife herein claims that the Nevada judgment is void on its face because the evidence adduced in Nevada was insufficient to support the judgment, particularly that there was a failure of proof in the Nevada proceeding as to "the specific six week period, from date to date, when, during the summer of 1965 [Husband] was actually resident, that is physically, corporeally, continuously present in the State of Nevada" and as to "the corroboration of a specific six week period, from date to date, of actual residence during the summer of 1965."

It is settled that, "the courts of one state have no legal right to 'annul,' or 'vacate,' or 'set aside' a foreign judgment, . . ." (*Dandini* v.

*Dandini,* 86 Cal.App.2d 478, 483 [195 P.2d 871].) If Wife seeks this relief by asserting the absence of sufficient evidence in the Nevada proceeding to support the Nevada finding of jurisdiction we cannot accommodate her. However, it is equally well settled that where, as here, a decree of divorce rendered in a sister state is offered in evidence as a bar to an asserted right, the trial court may inquire into the *jurisdiction* of the sister-state court which rendered the decree. (*Crouch* v. *Crouch,* 28 Cal.2d 243, 249 [169 P.2d 897].)

Under California law, a collateral attack on a local judgment is limited to an examination of the judgment roll. Hence, if the jurisdictional defect does not appear on the face of the record, the presumption of jurisdiction is conclusive. (*Craney* v. *Low,* 46 Cal.2d 757, 760 [298 P.2d 860]; *Harley* v. *Superior Court,* 226 Cal.App.2d 432, 437 [38 Cal.Rptr. 72]; *Hogan* v. *Superior Court,* 74 Cal.App. 704, 709 [241 P. 584].) In Nevada the rule is otherwise. There, in a collateral attack on a Nevada judgment, the court may go beyond the judgment roll and review the jurisdictional evidence for sufficiency. (*Moore* v. *Moore,* 75 Nev. 189 [336 P.2d 1073, 1075].) However, even there, the rule is that there must be a total failure of proof of jurisdiction in order to find the decree void. (*Moore* v. *Moore, supra.*)

In the instant case, however, we are concerned with a collateral attack on a Nevada judgment by a California court. In such circumstances California has followed the well established rule of *Williams* v. *North Carolina,* 325 U.S. 226 [89 L.Ed. 1577, 65 S.Ct. 1092, 157 A.L.R. 1366], and reexamined the jurisdictional facts to determine whether the foreign court in fact had jurisdiction. Extrinsic evidence is admissible in such a proceeding. "Such decree may be impeached collaterally by extrinsic evidence. This is true notwithstanding either the recitals of such decree or the false testimony given by the plaintiff in support of the judgment." (*Roberts* v. *Roberts,* 81 Cal.App.2d 871, 879 [185 P.2d 381] [disapproved on another point in *Spellens* v. *Spellens,* 49 Cal.2d 210, 219 (317 P.2d 613)]; see also *Seabron* v. *Seabron,* 133 Cal.App.2d 374, 375 [284 P.2d 117]; *Strauss* v. *Strauss,* 90 Cal.App.2d 757, 758 [203 P.2d 857].) The trial court reexamining the jurisdiction of a sister state may scrutinize the circumstances occurring after rendition of that decree as well as the facts as they existed at the time of rendition of the decree. The trial court here was not limited to a review of the evidence adduced in the Nevada proceeding as Wife suggests. Reexamination of jurisdiction on collateral attack is in effect a trial de novo on that issue.

Wife relies on *Aldabe* v. *Aldabe,* 209 Cal.App.2d 453 [26 Cal.Rptr. 208], pointing out that there the court reviewed the jurisdictional evidence

adduced in the Nevada divorce proceeding.[1] However, in *Aldabe* the pivotal issue was whether the wife who sought to collaterally attack the Nevada divorce decree in California had participated in the Nevada proceeding and thus could be said to be estopped from attacking the Nevada judgment.

■ The requirements of full faith and credit bar a defendant from collaterally attacking a divorce decree on jurisdictional grounds in the courts of a sister state where the defendant has participated in the divorce proceedings, and has been accorded full opportunity to contest jurisdictional issues and where the foreign decree is not susceptible to such collateral attack in the courts of the state which rendered the decree. It was pursuit of the inquiry whether the defendant wife had had an opportunity to contest the jurisdictional issue in Nevada and whether the Nevada decree was subject to collateral attack on this issue in Nevada which led the *Aldabe* court to a review of the jurisdictional evidence introduced in the Nevada proceeding.

■ Finally in the instant matter, Wife, having failed to introduce the transcript of the Nevada proceeding in evidence[2] at the trial below, cannot now argue that the facts adduced therein somehow limited the jurisdictional inquiry here.

The admissibility of extrinsic evidence to prove the validity or invalidity

---

[1] In *Aldabe* v. *Aldabe, supra,* the husband and wife lived upon a ranch which was located partly in Nevada and partly in California. The wife instituted divorce proceedings in Nevada, but almost immediately she discharged her Nevada attorney. The wife then commenced a divorce action in California, having instructed her former Nevada attorney to dismiss the Nevada action. He failed to do so, partly because the husband had filed a counterclaim for divorce in the Nevada action. The Nevada proceeding continued to judgment, and the court awarded a divorce to the husband. The wife at all times thought that the Nevada proceeding had been dismissed pursuant to her directions and had no notice of the subsequent proceedings in Nevada. Thereafter, the husband filed an answer in the California proceeding, and an evidentiary hearing was held upon his motion to terminate temporary alimony and support based on his claim that the Nevada decree had dissolved the marriage. The motion was granted on the ground that the Nevada decree was entitled to full faith and credit. At the trial of the California divorce proceeding, the issues were submitted on the evidence that had been produced at the hearing on the motion. Judgment at the trial was entered for the husband, and the wife appealed. During the California evidentiary hearing concerning the residence of the parties, evidence was presented showing that the residence and all of the outbuildings of the ranch were located in California. The Court of Appeal in California noted that this fact, although undisputed in the California proceeding, was never presented to the Nevada court. Therefore, based exclusively upon the location of the living quarters of the parties on the California portion of the ranch, the Court of Appeal in California decided that, as a matter of law, both parties were residents of California.

[2] At oral argument this court requested counsel to make a showing as to whether the Nevada trial transcript was introduced in evidence in the court below. By letter counsel for Wife indicated that the transcript of the Nevada trial was only introduced in evidence at a hearing on a motion prior to trial.

of the Nevada decree was never questioned by Husband herein, and the trial court gave counsel on each side every opportunity to bring in whatever evidence they thought pertinent to this issue.

Wife claims, however, that the evidence was insufficient to support the trial court's finding that Husband was a bona fide domiciliary of Nevada at the time the Nevada decree was granted.

### Summary of Domicile Evidence

a) The Nevada ranch: In 1960, six years prior to Husband's marriage to Wife, he had purchased a ranch in Winnemucca, Nevada, on which he intended to retire. The ranch, which Husband ran under the name Great Western Land & Cattle Co., consisted of a combination of three units. As of June 7, 1966, it was worth approximately $1,300,000.

The buildings of the ranch included a main house which was occupied by the ranch manager. Husband supervised numerous improvements to the ranch over the years from 1961 through 1965, including the drilling of wells, supplying electricity, installing electric pumps, a diversion dam, underground pipes for water, a feed lock consisting of 10 corrals, putting 500 acres under cultivation, and enlarging the main house to provide it with a bedroom and private bath for himself. Husband testified that from 1962 through 1965 he spent as much of each summer as possible at the Nevada ranch from turnout[3] time in April, until roundup time in October. He did not spend the six weeks immediately preceding the filing of his Nevada divorce complaint in Nevada.[4] Although in 1966 Husband attempted to sell part of the Great Western Land & Cattle Co. holdings, the deal was never consummated, and Husband owned all of the property at the time of trial.

Wife testified that during the course of their marriage, Husband went to the ranch in Nevada five or six times; that on these occasions he never spent more than three or four days at a time in Nevada; and that she phoned him every night while he was in Nevada at the Sonoma Inn in Winnemucca.

b) Living arrangements in California: For many years prior to 1960 Husband lived in California and acquired a considerable amount of property here. From the summer of 1965 until approximately November 1966

---

[3]Referring to turning out the cattle to pasture.

[4]Testimony given by Husband in the ex parte Nevada divorce proceeding was that he had been at the ranch for a period of six weeks during the late summer of 1965. At the trial of the California action, Husband recanted this testimony saying that he must have been thinking of 1964, because his son (by a former marriage) had stayed with his mother for the entire summer of 1964.

Husband maintained an apartment at 323 No. Almont, Beverly Hills, where he lived part of the time with his son, Brad, who was going to school in Beverly Hills. He then on December 16, 1966, moved to 2555 No. Hutton Drive, Beverly Hills, where he signed a two-year lease. Husband married Wife July 23, 1966. They lived together with their sons by prior marriages at the Hutton Drive residence during the course of the marriage.

Husband wished to keep his son in school in Beverly Hills (1) because it was 18 to 20 miles to the nearest school from his Nevada ranch, and (2) because his natural mother was in the Los Angeles area.

c) Husband's California property: After Husband allegedly acquired the intent to make Nevada his legal domicile, he started attempting to divest himself of his California property. In 1962 or 1963 he sold three office buildings in Beverly Hills and in 1963 or 1964 he sold a building on the corner of Lakewood and Firestone in Downey and another on the corner of Third and Lucas. In 1963 he sold an apartment building on Eighth and Oxford in Los Angeles and also a building located in Fresno. In 1965 he sold the Black Building (corner of Fourth and Hill Streets). In 1966 he sold his Palm Springs residence.

At the time of trial Husband still was the co-owner of an apartment house on Wilshire Boulevard in Los Angeles, owner of an office building in Van Nuys, an office building in Fresno, and a 50 percent beneficial interest in 18 acres of unimproved property in Indio. Husband testified that he had consistently, but unsuccessfully attempted to dispose of this property.

Since January 1, 1965, Husband had purchased no property in California. From 1964 until July 1967, Ben Hecht Company took over all management of Husband's Van Nuys property. On the latter date Husband could no longer afford the service, and it was discontinued. From May 1964 Shephard, Knapp & Appleton managed Husband's Fresno property. Between 1965 and 1967, the only thing which Husband actively managed was his Nevada ranch property.

d) Banking: Husband had one bank account in California at the Beverly Hills branch of the Bank of America. It was in the name of Ted Leff Enterprises. He used this account for what he termed "away from home" expenses (meaning away from Nevada). Such expenses included rent on his Beverly Hills apartment and later on his rented home, doctor bills, and cash for groceries. Husband got money for personal expenses in Nevada from the Great Western Land & Cattle Co. account maintained in Winnemucca. Husband had no personal account in Nevada.

e) Tax returns: Husband commenced filing nonresident tax returns in California in 1962.

f) Credit card purchases: Husband stipulated that since January 1964 he had received statements from all credit card purchases in Los Angeles.

In answer to Husband's assertion that he had spent most of the summer of 1965 at the ranch in Nevada, Wife offered copious records from various gasoline companies showing purchases of gasoline in Los Angeles during the summer of 1965. Husband explained the reason for a paucity of purchases in Nevada on the basis that gasoline tanks were maintained on the ranch in Winnemucca and that his drawings therefrom were charged to the ranch account.

g) Driver's license and car registration: Husband's California driver's license expired on September 6, 1964. Husband acquired a Nevada driver's license on September 29, 1964. Husband's expired California license was revoked on September 14, 1964 (pursuant to Veh. Code, § 14103—ten convictions and two accidents). Wife testified that Husband told her the only reason he got a Nevada driver's license was because his California license had been revoked. Husband testified that he was never served with notice of revocation of his California driver's license. Husband registered his 1965 Lincoln in Nevada after he purchased it in 1965.

h) Voting record: It was stipulated that Husband voted in the general election in Pershing County, Nevada, in 1966, and that he signed an "Affidavit of Registration" in Nevada on August 30, 1965, which stated that he had resided in Nevada since May 1964. Husband voted in the general election in Riverside County, California, in 1964.

i) Miscellaneous: Husband is a licensed California real estate broker. His license was renewed for the period from October 1, 1967, to September 30, 1971, on an inactive status.

Husband has been a deputy constable of the State of Nevada for Clark County since July 1965, a position open only to Nevada residents.[5]

Wife testified that the reason Husband collected indicia of being a Nevada resident was to avoid payment of California taxes.

■ Review of the evidence in support of the trial court's findings herein

[5]Section 258.060, subdivision 1 of the Nevada Revised Statutes, reads as follows: "All constables are authorized to appoint deputies, who shall have power to transact all official business appertaining to the offices to the same extent as their principals, but no person shall be appointed a deputy constable unless such person shall have been a resident of the State of Nevada for at least 6 months prior to the date of such appointment."

is governed by the substantial evidence rule. That is, the reviewing court's task begins and ends with a determination as to whether there is any substantial evidence in the record to support the trial court's finding that Husband was a bona fide domiciliary of Nevada. (*Guardianship of Mosier*, 246 Cal.App.2d 164, 169 [54 Cal.Rptr. 447]; *Herczog* v. *Herczog*, 186 Cal.App.2d 318, 322 [9 Cal.Rptr. 5]; *Proper* v. *Proper*, 102 Cal.App.2d 612, 615 [228 P.2d 62].)

Bona fide domicile in a sister state necessary to support a foreign divorce decree is a question of fact. (*Huntington* v. *Huntington*, 120 Cal.App.2d 705, 710 [262 P.2d 104].)

Thus in *Baldwin* v. *Baldwin*, 28 Cal.2d 406, 410 [170 P.2d 670], it was held that in a wife's action for divorce, a finding that a previous divorce obtained by the husband in Nevada was based on a bona fide residence will not be disturbed on appeal where the wife relies on evidence which does nothing more than create a conflict on this question.

We may not, as Wife suggests we do, reweigh the evidence adduced in the trial court. Wife relies on *Aldabe* v. *Aldabe, supra,* 209 Cal.App.2d 453. In that case, as mentioned above, one of the pivotal issues was whether the wife (seeking a California divorce) had participated in the Nevada proceeding (in which the husband had secured a divorce decree). Evidence on this issue offered by the wife had been improperly excluded by the trial court. The appellate court, in determining whether this exclusion of evidence was improper followed the well established procedure of examining the entire record, and "to some extent [weighing] the evidence to determine whether . . . 'a result more favorable to the appealing party would have been reached in the absence of the error.' [Citations.]" (*Aldabe* v. *Aldabe, supra,* at p. 457.) We find no such error in the record of the instant proceedings. Accordingly, we follow the substantial evidence rule above stated.

 Viewing all conflicts in the evidence as though resolved in favor of Husband, we find the evidence amply supports the trial court's explicit finding that Husband from August 30, 1965 (almost one year prior to his marriage to Wife) to and including September 27, 1967 (the date of his Nevada divorce decree), was a continuous "bona fide [domiciliary] of the State of Nevada." This is not the usual case of one party leaving the marital domicile and acquiring either a sham or actual bona fide domicile in another state just prior to securing a divorce. The trial court found that Husband was a bona fide domiciliary of Nevada prior to his marriage to Wife. At no time did Wife argue that Husband thereafter reacquired a California domicile; nor, in fact, would the facts support such a contention. Change of domicile depends on union of actual change of residence

and intention to remain in the new location permanently or for an indefinite period of time. (*Estate of Phillips,* 269 Cal.App.2d 656, 659 [75 Cal.Rptr. 301].) One's prior domicile continues until he acquires a new one. (*New England Mutual Life Insurance Co.* v. *Lauffer,* 215 F.Supp. 91, 97.) ■ Husband had a permanent home in Nevada on his ranch acquired in 1960. It is true that he maintained a rented residence in California from the summer of 1965 through the time of acquisition of his Nevada decree, and that his wife and son lived in California during that time. However, Husband had legitimate business reasons for maintaining a California residence. He had considerable property in California. Although by 1965 he had sold a large part of this property, from 1965 to 1967 he was still engaged in attempting to sell the four remaining properties. ■ Where a person maintains two residences, determination of the issue of domicile depends to a great extent upon the person's intention as manifested by his acts and declarations on the subject. (*Chambers* v. *Hathaway,* 187 Cal. 104, 105 [200 P. 931]; *Estate of Brady,* 177 Cal. 537, 539 [171 P. 303].)

■ Husband testified that at all times his intention was to be a domiciliary of Nevada.

The evidence as outlined above shows that his actions were consistent with his avowed declarations of intent. He owned the ranch in Nevada, while he rented his California residence. He had a Nevada driver's license and Nevada registration for his car. He filed tax returns as a Nevada domiciliary, and he was registered to vote in Nevada and did, in fact, vote there. ■ In determining a person's domicile, his voting registration is one of the important acts to be considered. (*Johnson* v. *Johnson,* 245 Cal.App.2d 40, 44 [53 Cal.Rptr. 567].)

The evidence on the issue of domicile was sufficient to support the trial court's findings.

■ Wife claims she was deprived of the opportunity to litigate in the trial court her right to share in the California community property estate of the parties and her right to support. Wife further points to the circumstance that the findings of fact in support of the Nevada divorce decree include a finding that, "[T]here are no community property rights in the State of Nevada to be adjudicated." Wife argues that the trial court's adjudication according full faith and credit to the Nevada decree "unconstitutionally foreclosed [Wife] of her right to determine her interest" in the Nevada community property estate. These rights were put in issue by the allegations of the Wife's complaint as amended and the Husband's answer as amended. The trial court did not preclude Wife from offering evidence on these matters. Both parties offered evidence on the issue of the validity of the

Nevada divorce decree having stipulated that that issue be tried first. After the introduction of this evidence, both sides rested, and argument was had. At the completion of the argument the court stated: "Let the record indicate that at the request of both counsel, each was allowed to reopen for the following purpose. [¶] The defendant's deposition has been received in evidence by reference as Plaintiff's 15. [¶] The plaintiff's deposition has been received in evidence by reference as Defendant's C in this matter."

The depositions of the parties explored such topics as their respective property holdings at the time the marriage was entered into, acquisitions and sales of property during the marriage, the parties' employment and income during the marriage, and the parties' personal and business expenses during the marriage.

Wife, in taking defendant's deposition, fully explored Husband's financial position, income and expenses regarding his extensive property holdings, cash-flow position, and debts and obligations. Husband, likewise, examined Wife's ability to support herself. Both depositions were taken in June 1969. Trial of this action commenced July 28, 1969, and was concluded on July 30, 1969. Neither party made any attempt to introduce further evidence of their respective property and alimony rights. The trial court did not make any findings with respect to the parties' marital property rights. Wife made no request for special findings on these issues, although she did raise objections to Husband's proposed findings and request special findings on the issue of the validity of the Nevada decree. Nor did Wife make an objection to a lack of adjudication of these issues in her motion for new trial.

■■■ "The effect on a wife's right to support of a foreign, ex parte divorce secured by her husband is determined by reference to the law of the state of the wife's domicile at the time of the divorce, . . ." (*Lewis* v. *Lewis,* 49 Cal.2d 389, 394 [317 P.2d 987]; see also *Jurczyk* v. *Jurczyk,* 232 Cal.App.2d 270, 271 [42 Cal.Rptr. 660].) Although during the course of the marriage a wife's domicile is her husband's domicile, a married woman who is separated from her husband may establish her own separate domicile. (Gov. Code, § 244.) ■■■ The evidence shows that Wife was domiciled in California at the time she sought the instant divorce. Wife resided in California and apparently considered herself to be a California resident at all times notwithstanding the legal effects of her marriage in Nevada to a domiciliary of Nevada on her domiciliary status. Thus California law determines Wife's right to adjudicate her claim to alimony and a division of the parties' alleged community property estate in California despite the existing valid Nevada divorce decree. In *Hudson* v. *Hudson,* 52 Cal.2d 735 [344 P.2d 295], the California Supreme Court, following *Vanderbilt* v. *Vanderbilt,* 354 U.S. 416 [1 L.Ed.2d 1456, 77 S.Ct. 1360],

held that a foreign ex parte divorce decree, even if valid could not terminate a nonparticipating spouse's right to alimony under California law. The Supreme Court, in *Hudson, supra,* at page 742, quoted from *DeYoung* v. *DeYoung,* 27 Cal.2d 521, 527 [165 P.2d 457], as follows: " 'In a divorce action in a foreign state upon constructive service the court there has authority to adjudicate status (in rem) of a person residing in that state but has not jurisdiction to adjudicate away (in personam) any of the then vested property rights of the absent spouse who does not reside in such state, who is not personally served with process in that state and who does not appear in the action. The personal rights of the spouses in property *not within the jurisdiction of the acting court* remain subject to litigation in the proper form.' " (Italics added.) The Nevada divorce decree does not purport to affect Wife's right to secure alimony or to share in the alleged California community property. Under the cases cited above, these issues were subject to litigation and adjudication in the California proceeding; and they were raised by the pleadings. A party has a right to express findings on all material issues, and failure to find on a material issue amounts to reversible error.

Wife herein requested the trial court to make findings of facts and conclusions of law. Under Code of Civil Procedure, section 632, upon such request, the findings "shall fairly disclose the court's determination of all issues of fact in the case."[6] Wife's right to alimony and a division of any California community property of the parties were material issues in this case, and no findings on them were made. This was error. (*Edgar* v. *Hitch,* 46 Cal.2d 309, 312 [294 P.2d 3]; *Williams* v. *Williams,* 14 Cal.App.3d 560, 566 [92 Cal.Rptr. 385]; *Duff* v. *Duff,* 256 Cal.App.2d 781, 785 [64 Cal.Rptr. 604]; Code Civ. Proc., § 632; Cal. Rules of Court, rule 232(c).)

Accordingly, we reverse and remand to the trial court with directions that the trial court make specific findings on the issues of alimony and the existence of and division of alleged California community property. We suggest that it is up to a party, if he or she so desires, to seek to reopen the case for the introduction of further evidence on these issues. Whether or not such reopening, if such a motion were to be made, should be allowed is up to the trial court in the exercise of its sound discretion.

 The question remains whether the Nevada court had jurisdiction to determine whether there was any community property interest of the parties as to property situated in Nevada where that court did not have in personam jurisdiction over Wife. The evidence shows that the only

---

[6]Repeated in California Rules of Court, rule 232(e).

property owned by Husband in Nevada was the Nevada ranch which was purchased in 1960 and was clearly Husband's separate property. Income from the ranch as reflected in the parties' 1966 tax return was approximately $38,000. In his deposition introduced below, Husband testified that he took no part in the management of the ranch that year, leaving it entirely in the hands of his ranch foreman and only visiting the ranch on about four or five occasions during the marriage. He further testified that he made no improvements on the property during the course of the marriage.[7] The only possible community property claims with respect to the Nevada real property were: 1) that Husband's labor and skill during the one-year marriage enhanced the value of the real property, 2) that a portion of the profits from the land was attributable to the Husband's labor and skill during the course of the marriage, and/or, 3) that community funds were used to improve Husband's separate property, or to pay taxes or satisfy an encumbrance on it and that Wife is entitled to reimbursement for her share of the community funds so used.

■ It is settled that Nevada having jurisdiction over property within its borders in rem is the only jurisdiction which could adjudicate the parties' title to that land. Thus, in *Taylor* v. *Taylor,* 192 Cal. 71, at page 76 [218 P. 756, 51 A.L.R. 1074], the California Supreme Court stated, "[J]urisdiction to affect the title to real estate by a judgment *in rem,* or directly against the thing itself, exists only in the courts of the state wherein the land is situated. 'No principle is more fundamental or thoroughly settled than that the local sovereignty, by itself or its judicial agencies, can alone adjudicate upon and determine the status of lands and immovable property within its borders, including their title and *its incidents* [italics added] and the mode in which they may be charged or conveyed. Neither the laws of another sovereignty, nor the judicial proceedings, decrees and judgments of its courts, can in the least degree affect such lands and immovable property.' [Citations.]" (See also *Fall* v. *Eastin,* 215 U.S. 1, 11 [54 L.Ed. 65, 70, 30 S.Ct. 3]; *Rozan* v. *Rozan,* 49 Cal.2d 322, 330 [317 P.2d 11].)

■ A court having jurisdiction in rem over property need not have in personam jurisdiction over the defendant in order to determine questions of title to that land. (*Title etc. Restoration Co.* v. *Kerrigan,* 150 Cal. 289, 309 [88 P. 356]; *Perkins* v. *Wakeham,* 86 Cal. 580, 582 [25 P. 51]; Rest. 2d Conflict of Laws, § 59, p. 197.)

Insofar as Wife's community property interests in Nevada may be said

---

[7]This evidence was uncontradicted and thus it appears that in fact there was no community property of the parties in Nevada to be adjudicated.

to be intangible personal property, the recent case of *Waite* v. *Waite*, 6 Cal.3d 461 [99 Cal.Rptr. 325, 492 P.2d 13] is controlling. ▮ Here, as there, the purpose of assigning a situs to Wife's community property interest in the Nevada property "is to establish jurisdiction to award those rights on dissolution of the marriage." (*Waite* v. *Waite, supra,* at p. 468.) Accordingly, the court held in *Waite* that: "[J]urisdiction should be determined 'in the light of the totality of contacts with the state involved' and the 'bearing that local contacts have to the question of over-all fair play and substantial justice.' " (*Waite* v. *Waite, supra,* at p. 468, quoting *Atkinson* v. *Superior Court,* 49 Cal.2d 338, 345-347 [316 P.2d 960].) ▮ Pursuit of such analysis in this case leads inevitably to the conclusion that the situs of whatever intangible personal property arose out of Husband's efforts during the marriage with respect to his Nevada separate property should be fixed in Nevada. The character of the profits from the Nevada ranch as community or separate property is governed by Nevada law. Husband was a domiciliary of Nevada prior to his marriage and remained a domiciliary there during the marriage. Evidence regarding the issues and profits of the ranch was more accessible to Nevada courts. The only interest California has in the determination of the Wife's rights to allegedly community profits from the Husband's separate Nevada estate is its concern that Wife, as a domiciliary of California, should not be deprived of support and thus become a burden on the State. However, as we have noted, Wife had the right to have adjudicated in California her support rights and her right to division of alleged California based community property. Weighing the respective interests of California and Nevada in deciding the question of Wife's alleged right to share in increased value of or profits from Husband's Nevada separate property, we hold that Nevada had jurisdiction to decide these issues and that its decision, finding that no community property of the parties hereto existed in Nevada must be accorded full faith and credit.

Wife claims that the trial court abused its discretion in "failing and refusing" to hear application for attorney's fees and costs pending the action.

Wife's action was filed August 16, 1967. Through January 1969, Wife's attorney, on the basis of several motions therefor, had been awarded $2,050 in attorney's fees and $86.95 in costs. Wife's final motion for attorney's fees came on for hearing on February 3, 1969, and her Husband's motion for continuance was granted, the court on its own motion awarding Wife's attorney $150 as attorney's fees, "solely on the ½ day involved on the motion to continue." Wife's motion for attorney's fees was continued on two more occasions to the date of May 16, 1969. The re-

porter's transcript of the hearing held on May 16, 1969, was not made part of the record on appeal. The minute order shows that testimony was taken from Husband, accountants for both Husband and Wife, and various individuals. The court ordered that Husband's and Wife's depositions be taken at the courthouse on June 3, 1969, and that Husband bring all financial records since the start of the marriage. The court reset the trial of the action from May 20, 1969, to July 21, 1969. The court further directed that information regarding Husband's income and outgo from January 1, 1966, to date be on hand for the trial. The court made no disposition of the Wife's motion for attorney's fees at that time. Wife made no request for a disposition of her motion for attorney's fees at the time of trial. On August 29, 1969, prior to entry of judgment but after trial, Wife's attorney filed a declaration requesting "a hearing"[8] on his motion for attorney's fees which he claimed had been under submission since February 3, 1969. On September 4, 1969, by personal letter from the trial court addressed to counsel for the parties (a copy of which was lodged in the superior court file), the trial court denied Wife's counsel's request for further hearing on the motion. That same day judgment was filed ordering that Wife "take nothing by reason of her complaint." Since the complaint requested attorney's fees, the judgment must be considered a determination of Wife's right thereto, and thus a ruling on the motion.

The trial court did not abuse its discretion in denying Wife's application for further hearing on the matter of attorney's fees after the trial, as a hearing thereon had already been granted. Testimony was taken at the May 16, 1969, hearing presumably on the issue of Wife's right to attorney's fees since the minute order issued that day was headed, "Nature of Proceedings: Plaintiff's [Wife's] Motion for attorney fees, etc. continued from May 13, 1969." The trial court may also have considered relevant evidence received at the trial.

The question remains whether the denial of attorney's fees was made on the merits. On appeal Wife suggests that because the trial court made findings only relating to the validity of the Nevada decree and then ruled that she take nothing by her complaint, it may have decided that, since the Nevada divorce was valid, Wife's California action for divorce and related relief failed and thus that under former Civil Code section 137.3, as amended in 1957 (now Civ. Code, § 4525), Wife was not entitled to attorney's fees because she had no cause of action for divorce. This basis for the court's ruling would have been erroneous and denied Wife a proper determination of her right to attorney's fees on the merits. Although the trial court properly ruled that the Nevada decree was valid,

---

[8]He must have meant *further hearing.*

this would not preclude an award for attorney's fees under proper evidentiary findings as to need and ability to pay, because the Wife's suit for alimony and a division of the California community property was properly before the court for adjudication. (*Foley* v. *Foley,* 214 Cal.App.2d 802, 811 [29 Cal.Rptr. 857].) Because the record is silent as to the basis for the trial court's determination on the question of Wife's right to attorney's fees, and the findings, as made, create the ambiguity expressed above, we direct that the trial court on remand make specific findings with respect to Wife's right to attorney fees.

In a separate appeal (2d Civ. No. 37404) from the order dated May 11, 1970, denying Wife's motion for attorney's fees and costs on appeal, Wife asserts that the trial court abused its discretion in denying Wife's application for attorney's fees on appeal. With respect to Wife's motion for attorney's fees on appeal, the trial court made the following order: "The Court finds that the appeal is not prosecuted in good faith and that it would be inequitable to require the respondent to pay fees and costs as requested by the petitioner and accordingly, the motion is denied."

It would seem from the presentation made in Wife's 120-page brief that the Wife prosecuted the instant appeal in good faith, and that on remand the trial court should rule on the motion for attorney's fees considering such factors as Wife's need, Husband's ability to pay, etc. (*Kopasz* v. *Kopasz,* 34 Cal.2d 423, 424 [210 P.2d 846]; *Baldwin* v. *Baldwin, supra,* 28 Cal.2d 406, 417; *Hunter* v. *Hunter,* 202 Cal.App.2d 84, 92 [20 Cal.Rptr. 730].)

By letter directed to this court, Wife dropped her appeal from the denial of her motion for new trial.

The judgment is affirmed in part and reversed in part with directions to conduct further proceedings consistent with this opinion; the order denying motion for fees and costs on appeal is reversed with directions.

Stephens, Acting P. J., and Aiso, J., concurred.

A petition for a rehearing was denied June 7, 1972.