GEORGE OKAMOTO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Okamoto v. Commissioner
Docket No. 12592-78.
United States Tax Court
T.C. Memo 1981-59; 1981 Tax Ct. Memo LEXIS 685; 41 T.C.M. (CCH) 857; T.C.M. (RIA) 81059; February 17, 1981. *685 George Okamoto, pro se. Mary Schewatz and DarwinR. Thomas, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined a deficiency in petitioner's Federal income tax for the taxable year 1975 in the amount of $ 3,421.18. The sole issue for decision is whether, during 1975, petitioner was domiciled in California, a community property state, and thus was entitled to attribute one-half of his income to his nonresident alien spouse. FINDINGSOF FACT Some of the facts have been stipulated and are so found. Petitioner resided in Seoul, Korea, at the time the petition herein was filed. He timely filed his Federal income tax return for 1975 with the Internal Revenue Service Center at Fresno, California. Petitioner is a United States citizen of Japanese ancestry. He was born in Sacramento, California, on November 19, 1918. He lived with his parents in California until the age of 12 or 13, at which time he and his parents returned to Japan. As soon as petitioner was graduated from high school in Japan, having lived there for approximately five years, he returned to the United States without his *686 family. He came back to the United States primarily because he still was not fluent in Japanese, he disliked the traditional Japanese customs, and most of his friends were in California. Until 1941, petitioner was employed as a clerk in Los Angeles, at the Grand Central Market. In November 1941, petitioner was drafted by the United States Army. At the time Pearl Harbor was bombed he was stationed in Texas; therefore, he was not placed in an internment camp. He was, however, demoted in rank (without prejudice) and allowed to perform only menial tasks. In 1943 or 1944, when the Japanese/American regiment was formed, petitioner volunteered to fight with them in Europe. His request to go to Europe was denied because he was needed as a linguist in the Pacific Theatre. His ability to speak, read, and write Japanese was important to the military. In an effort to get into combat, and thus prove his loyalty to the United States, the petitioner volunteered for and attended intelligence school. In 1945 he was shipped to the South Pacific where he served as an interpreter/translator for the duration of the war.
After the war with Japan had ended, petitioner was not discharged until *687 a year after the rest of his unit because of the Army's need for people with his abilities. Upon receiving his honorable discharge, the petitioner was requested by the Army to remain in Japan as a civilian working for the U.S. Army Forces Far East Intelligence Unit. He agreed and gradually gained experience as a personnel security specialist.Petitioner remained in Japan until 1958, recommitting himself every 12 or 24 months to stay for an additional like period. While in Japan petitioner periodically visited his parents who then lived in Hiroshima. In 1950 he married his wife, Yasuko. Also while in Japan the petitioner and his wife had two sons. In 1958, petitioner's job in Japan was abolished. His career choices were either to return to the United States without a marketable skill, losing his 17-years' credit toward retirement with the United States Government, and losing his job seniority, [1] or to continue in government service in Korea until retirement. Petitioner chose to go to Korea. The petitioner could not take his family with him to Korea. Until 1974 he lived there, separated from his family, in bachelor officer's quarters. The conditions in Korea were deplorable-- *688 one of the most undesirable in the U.S. Army. Therefore, it was only a 12-month tour of duty for army enlisted personnel. Korea is particularly bad for an American of Japanese ancestry, due to intense anti-Japanese sentiment. Petitioner has agreed to remain in Korea under 12- or 24-month commitments because of a need for intelligence specialists who would stay on longer than 12 months, to give continuity to the security program there. It was petitioner's job to emphasize the importance of internal security, to locate and alleviate weaknesses in the security system, to make recommendations and review the recommendations of others with respect to security clearance revocation, and to establish security procedures for the entire Eighth United States Army. In 1974, petitioner's wife moved to Korea to be with her husband, and they moved off the base. Prior to that time the petitioner's dependents were not permitted to join him inKorea. His children did not join him in 1974. At that time the eldest was in the U.S. Navy, which had paid for his education at UCLA, School of Dentistry. *689 The younger son was attending the University of California, Berkeley. The petitioner, as a civilian employee of the U.S. Army, is entitled to "home leave" to the United States every two years at government expense. Since he has been overseas, he has returned to California in 1946, 1953, 1957, 1967, 1970, and 1973, staying with family and friends. Between 1973 and the time of the trial in this case, he has not visited the United States because he has been too busy in his job. His wife has never been to the United States; however, at the time of trial she was planning to come to the states within three to four months. In 1973 petitioner was eligible for retirement. He was 55 years of age and had at least 30 years of U.S. Government service. He has stayed in Korea because the military has requested it in the event hostilities should break out with North Korea. Even at the time of trial, when petitioner was 62 years old, he testified that if war broke out with North Korea he would stay on there if needed. In 1973 petitioner received three or four job offers in the fields of counter-intelligence and personnel security from various organizations in the Far East, but refused them. *690 He felt that if the unstable political situation in South Korea erupted he would be much needed by United States forces there. Throughout his civilian employment in the Far East, petitioner and his family have lived in U.S. Army approved and paid-for quarters. Even for the 17 years the petitioner was separated from his family, the Army paid for his wife and children's apartment in Japan. The petitioner has never owned real property in Japan or Korea. In addition to family and friends, in 1975 the petitioner held many contacts with California. These include: the maintenance of savings and checking accounts; ownership of stock in Pacific Telephone and Telegraph Company; the ownership of 2-1/2 acres of undeveloped land; shares in the San Diego Navy Federal Credit Union; the ownership of and payment of taxes on a 4-unit apartment complex in Los Angeles; and the maintenance of his status as a registered voter in Los Angeles County. Furthermore, petitioner's last will and testament, dated 1964, Seoul, Korea, provides that he is a legal resident of the State of California. On his 1975 Federal income tax return petitioner excluded one-half of his gross income for that year on *691 the basis that he was domiciled in California, a community property state, and was thus entitled to attribute one-half of his income to his nonresident alien spouse. In his notice of deficiency respondent disallowed petitioner's exclusion, asserting that petitioner was domiciled in Korea during 1975. OPINION The sole issue for decision is whether petitioner was domiciled in California in 1975. Petitioner asserts that his domicile of choice has continuously been California since the late 1930's. Respondent, on the other hand, maintains that the petitioner abandoned his California domicile by choice in favor of Japan in 1946. Respondent further alleges that petitioner became a domiciliary of Korea in 1974, when his wife left Japan to join him there. The parties agree that the petitioner's domicile of origin was California. There is also no dispute that his domicile became Japan, by operation of law, at the time he moved there as a child with his parents.Finally, it is undisputed that the petitioner's domicile of choice became California in the late 1930's, when he returned from Japan without his family, and that it continued to be California until 1946. Thus, the time with *692 which we are concerned is 1946--1975. Once a domicile is acquiredit is presumed to continue until it is shown to have been changed. Mitchell v. United States, 88 U.S. (21 Wall.) 350, 353 (1874); Pentland v. Commissioner, 11 T.C. 116 (1948). For one to acquire a new domicile by choice he must, during a period of actual residence in a locality, maintain a present intention to remain and establish a home there. Texas v. Florida, 306 U.S. 398, 424 (1939); Taira v. Commissioner, 51 T.C. 662 (1969); Crespi v. Commissioner, 44 B.T.A. 670 (1941). If actual residence and the requisite intent do not coexist a new domicile cannot be acquired. Mitchell v. United States, supra; Hampton v. Commissioner, 38 T.C. 131 (1962); Aldabe v. Aldabe, 209 Cal. App. 2d 453, 26 Cal. Rptr. 208 (1963). Thus, once acquired, one's domicile is not altered merely by a change of residence alone. Crespi v. Commissioner, supra.While one may have several residences, he may have only one domicile. Leff v. Leff, 25 Cal. App. 3d 630, 102 Cal. Rptr. 195 (1972). *693 These are questions of fact for this Court to decide based upon all of the evidence presented. Dist. of Columbia v. Murphy, 314 U.S. 441 (1941); Taira v. Commissioner, supra.Notwithstanding the so-called "presumption" that one's domicile continues until shown to be otherwise, the petitioner bears the burden in the instant case to prove that the respondent's determination of domicile is erroneous. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Based upon all the surrounding facts and circumstances, we conclude that the petitioner has carried his burden. We will first consider the period from 1946 to 1958. Ever since the Japanese bombed Pearl Harbor petitioner has done all that he could to prove himself a loyal American. During the war this included volunteering for dangerous duty and combat. After the war had ended the petitioner was asked to stay on in Japan. He agreed primarily because he was needed by the U.S. Army there. Other reasons are apparent, the most obvious of which is that immediately after the war anti-Japanese sentiment in the United States would make securing *694 employment difficult. Throughout his stay in Japan the petitioner always lived in quarters that were paid for and/or supplied by the U.S.Army. He never owned property there nor did he live with relatives, although he did visit them occasionally. He testified that had he believed he could find suitable employment in the United States he would have returned. Moreover, the petitioner continually maintained his contacts with California. He returned on "home leave" in 1946, 1953, and 1957, to visit family and friends. Other contacts included bank accounts, marketable securities, investment real estate, and undeveloped land upon which he intended to build a home on his return to California. He also voted in California by absentee ballot and paid state income taxes in years when he had not income there. This Court found the petitioner's testimony entirely credible. He was a U.S. citizen and domiciliary of California whose motive for residing in Japan was his employment with the U.S. Government. He did not intend to remain in Japan any longer than his employment lasted. Thus, we find that during the period from 1946 to 1958 petitioner did not change his domicile from California. *695 Although he resided in Japan, he did not intend to remain and make that his home. Next we will discuss the 1958--1975 period. In 1958 the petitioner's employment in Japan was no longer needed. At this point the petitioner had been with the Government 17 years. He could have left the Far East at that time, but to do so would have cost him 17 years credit toward Government retirement and his job seniority. Furthermore, petitioner had no skill which was marketable in the United States. Since 1945 he had been employed in an intelligence unit as a personnel security specialist. His only other option was to accept assignment in post-war Korea. He accepted reluctantly. Not only were the conditions in Korea deplorable and anti-Japanese sentiment severe, but he had to leave his wife and children behind. Nevertheless, his deep loyalty to the United States accompanied by his need to support his family kept him there.All the while, however, petitioner never allowed his contacts with California to wane. In addition to those contacts mentioned earlier, in his last will, executed in 1964, the petitioner declared that California was his place of legal residence. His children were raised *696 as Americans, both attending universities in California and one serving in the U.S. Navy.Furthermore, he returned to the United States, specifically California, on "home leave" in 1967, 1970, and 1973. He never owned property in Korea and he continuously lived in U.S. Army owned and/or paid for quarters. In 1973 the petitioner was eligible for retirement-- 55 years of age and 32 years U.S. Government employment. At that time border skirmishes between North and South Korea were prevalent. We recall that the North Koreans seized the U.S.S. Pueblo in 1968 and held its crew for over a year. It is reasonable that hostilities with North Korea were foreseeable. Thus, when petitioner was requested to stay on with the Army in Korea in 1973, he agreed. He was a much needed intelligence specialist. He could have taken his retirement and accepted one of the several job offers which he received. Instead, however, his loyalty to the United States prompted him to stay. Finally, in 1974 the U.S. Army allowed his family to join him in Korea. The respondent asserts that this is when the petitioner chose Korea as his domicile. The fact that his wife had not joined him earlier was not for any *697 reason other than that the U.S. Army would not allow it. That his wife joined him, most assuredly made the petitioner's residence in Korea more pleasant, but it does not show that he intended to stay there--to make Korea his home. The petitioner's evidence, including his testimony, which we find absolutely truthful, clearly shows that he was in the Far East for employment purposes only. He had no intention to establish domicile there, and had every intention of returning to California after he was no longer needed by the U.S. Army. In 1941, at the time he was drafted, petitioner's domicile of choice was California. Between that time and 1975 he did not consider Japan or Korea the place he intended to remain with any substantial degree of permanence. Dist. of Columbia v. Murphy, supra; Tairav. Commissioner, 51 T.C. 662 (1969). [2] He intended to remain in those locales only so long as his employment with the U.S. Government and the Army's need for him continued. He intended, throughout, to return to California after that time. Thus, his domicile remained in California. *698 Decision will be entered for the petitioner. Footnotes
1. Petitioner had no government reemployment rights in the United States since he was hired overseas.↩
2. At first glance it may appear that the facts of Taira v. Commissioner, 51 T.C. 662 (1969), are on point with those in the instant case. However, a close reading of both shows that Taira is distinguishable on many points. There the taxpayer maintained significantly greater contacts indicating permanence with the jurisdiction which the respondent determined to be his domicile and less contacts with California than those respective contacts presented in the instant case. The facts in Taira↩ showed that that petitioner sufered a "withering intent" to return to California--not so in the instant case.