[No. B056303. Second Dist., Div. Six. Nov. 27, 1991.]

SANDRA OTANEZ, Plaintiff and Appellant, v.
BLUE SKIES MOBILE HOME PARK et al., Defendants and
Respondents.

**COUNSEL**

Richard A. Weinstock for Plaintiff and Appellant.

Crosby & Stanton and Bruce E. Stanton as Amici Curiae on behalf of Plaintiff and Appellant.

Eckert, Smith, Tyler & Hoppell and James H. Smith for Defendants and Respondents.

## OPINION

**GILBERT, J.**—A landlord may not terminate a tenant's occupancy of his or her residence under a lease by shutting off the utility services. (Civ. Code,[1] § 789.3.)

We hold that a tenant need not live in the premises full-time in order to be a resident.

Here the owner of a mobilehome in Santa Barbara moved to Nevada but continued to pay rent for the space in which her mobilehome was located. Her landlord, through his property managers, discontinued the utilities to her mobilehome. She sued the landlord and property managers under section 789.3 and under a statute defining tenancy (§ 798.12). The trial court granted the defendants' motion for summary judgment.

The tenant appeals contending she qualified as a resident of the mobilehome even though she had moved elsewhere; residency presented a triable issue of fact; and the motion did not reach the cause of action for violation of section 798.12. We hold that a reasonable trier of fact could find the landlord, but not the property managers, liable under section 789.3. We reverse.

### FACTS

Sandra Otanez owned a mobilehome at the Blue Skies Mobile Home Park. Her lease of the space on which her mobilehome was situated provided in part: "LESSOR shall not use or permit the demised premises or any part thereof to be used for any purpose other than as residence for the persons listed above. No other persons may reside at the premises without prior written permission of LESSOR . . . ." The rent included payment for utilities except electricity and gas. Charges for electricity and gas were billed to the lessee monthly by the lessor.

In August of 1989 Otanez moved to Stateline, Nevada, and put her mobilehome up for sale. She continued, however, to pay and Blue Skies[2] continued to accept monthly rent and utility payments. On February 2, 1990, before the expiration of the lease term, Blue Skies cut off gas, water and electricity to Otanez's mobilehome. The utilities were restored on June 1, 1990, after Otanez's attorney and Paul Peppard, the owner of Blue Skies, corresponded.

---

[1]All further statutory references are to the Civil Code unless otherwise specified.

[2]Unless otherwise indicated "Blue Skies" collectively refers to the park's owner, Paul Peppard, and managers, Robert and Eleanor Brooks.

Shortly thereafter Otanez sued Peppard and the managers of Blue Skies, Robert and Eleanor Brooks, for unlawful interruption of utility services (Civ. Code, §§ 789.3, 798.86) and for interference with Otanez's right of quiet enjoyment. The complaint requested actual, statutory and punitive damages.

Blue Skies moved for summary judgment on the ground that the prohibition against termination of utility service by a landlord contained in section 789.3 only applies to property "used by a tenant as his residence," and it was undisputed that Otanez was not residing at Blue Skies when the utilities were turned off. Blue Skies also contended that it was undisputed the Brooks had no interest in Blue Skies and thus were not landlords within the meaning of the statute.

In support of its motion Blue Skies cited portions of Otanez's deposition wherein she stated that between February 1 and July 1, 1990 she was living in Lake Tahoe in a mobilehome she had purchased there; she was not living in Santa Barbara or occupying a mobilehome there; no one resided in, occupied or stayed in the mobilehome; and she had no desire to move back into the mobilehome in Santa Barbara. Blue Skies also submitted an affidavit from the Brooks in which they declared they were managers of the park but had no interest in it.

In opposition to the motion Otanez submitted an affidavit stating that although she established permanent residency in Lake Tahoe she never abandoned her residence in her Santa Barbara mobilehome, but continued to pay rent; she "often lived in it and used it as a residence when [she] made trips to Santa Barbara to visit family"; two of these trips, of approximately seven days each, were in January and August of 1990; she would have visited Santa Barbara more often but was unable to do so while the utilities were shut off; she left household furniture and furnishings in the mobilehome; she had people temporarily living in her mobilehome for short periods; in January 1990 she "tentatively sold" her mobilehome to Cecilia Berry subject to her approval by Blue Skies; Berry was to move in beginning February 1 until she was either approved or disapproved, but the utilities were turned off on February 2; she inquired why Blue Skies had turned off the utilities, but she received no reply.

Cecilia Berry declared that she received permission from Otanez to move into the mobilehome pending her approval by Blue Skies; she did not intend to physically move in on February 2; the manager told her she could not move in and blocked the door; the next day when she returned the utilities had been turned off.

## DISCUSSION

### I

█ Section 789.3, subdivision (a) provides in part, "A landlord shall not with intent to terminate the occupancy under any lease . . . of property used by a tenant as his residence willfully cause, directly or indirectly, the interruption or termination of any utility service furnished the tenant . . . ." Subdivision (c) provides for actual damages and statutory damages not to exceed $100 for each day the landlord is in violation.

Otanez contends the term "residence" as used in the statute simply requires that the property be rented for residential use as opposed to business, commercial or some other use. But the clauses "intent to terminate the occupancy" and "property used by a tenant as his residence" indicate our Legislature intended to require that the property actually be used as a residence, and not simply that the property be rented for residential purposes.

Nevertheless, there is nothing in the statute that limits its application to a tenant's permanent residence. A party can have more than one residence (see *In re Marriage of Leff* (1972) 25 Cal.App.3d 630, 642 [102 Cal.Rptr. 195]), and we see no reason why the statute would not apply to a mobilehome used as a temporary or occasional residence.

Otanez declared that she continued to pay rent, she lived in the mobilehome when she visited Santa Barbara, she would have visited more if the utilities had been left turned on and she kept her furniture and furnishings in the mobilehome. A trier of fact could reasonably conclude that she used the mobilehome sufficiently for it to qualify as a temporary residence.

Blue Skies' reliance on *Vangard Ins. Co.* v. *Hartford Ins. Co.* (1970) 9 Cal.App.3d 765 [88 Cal.Rptr. 628], is misplaced. There the court stated, "Residence connotes any place of abode of some permanency, more than a temporary sojourn." (*Id.* at p. 768.) Here a reasonable trier of fact could conclude that the mobilehome was used by Otanez as more than a place of temporary sojourn.

Moreover "residence" is a word of varying import, and its statutory meaning depends on the context and purpose of the statute in which it is used. (*Myers* v. *Carter* (1960) 178 Cal.App.2d 622, 625 [3 Cal.Rptr. 205].) The manifest purpose of section 789.3 is to discourage landlords from using self-help. A construction of the statute that would limit its operation to property used as a permanent residence would defeat that purpose.

Nor is there any requirement in the statute that a tenant be in physical occupancy of the residence at the time the utilities are turned off. A reasonable trier of fact could find that the utilities were turned off in order to terminate any and all occupancy of the mobilehome.

## II

■ Next we must decide whether the mobilehome park managers may be liable under section 789.3.

The statute provides only that a "landlord" shall not willfully cause termination of utility service. No mention is made of the landlord's property managers. Nevertheless, Otanez argues the managers as agents of the landlord are liable under section 2343. That section provides in part: "One who assumes to act as an agent is responsible to third persons as a principal for his acts in the course of his agency, in any of the following cases, and in no others . . . . [¶] 3. When his acts are wrongful in their nature."

Here the acts of the managers were not wrongful in their nature. The acts are wrongful only if they are proscribed by statute. Because section 789.3 does not apply to persons other than landlords, we can see no basis for holding the managers liable.

## III

Otanez contends the motion for summary judgment should not have been granted on the second cause of action. The cause of action alleges that by turning off the utilities Blue Skies violated section 798.12, and that the violation gave her the right to $500 statutory damages under section 798.86. But section 798.12 merely defines tenancy. It neither confers substantive rights nor imposes duties. Under the circumstances summary judgment was appropriate.

The judgment is reversed as to all parties except Robert and Eleanor Brooks. All parties are to bear their own costs.

Stone (S. J.), P. J., and Yegan, J., concurred.